11 THIBODEAUX, Judge.
In this workers’ compensation case, Viola Baullion appeals the Office of Workers’ Compensation’s determination that she could return to light-duty work and its failure to address her need to use a rolling walker. Ms. Baullion also appeals the workers’ compensation judge’s findings limiting her work-related injuries to her neck, shoulder and arm problems and limiting her right to future medical treatment.
*570 The parties stipulated to an occurrence of an accident in May of 1993 while Ms. Baullion was in the course and scope of her employment with Old American Pottery Company (Old American), that Ms. Baullion’s compensation rate was $127.06, and that she was paid workers’ compensation benefits through March 3, 1999. The workers’ compensation judge found that Ms. Baullion’s employer, Old American, should have authorized an additional psychological evaluation based upon Ms. Baul-lion’s treating physician’s suspicion that she was suffering from work-related depression and anxiety due to chronic pain.
Old American answered Ms. Baullion’s appeal and contends that the workers’ compensation judge committed error in finding that Ms. Baullion is entitled to an additional psychological evaluation. Further, Old American contends the workers’ compensation judge erred in casting it, an insured employer, with the payment of penalties and attorney fees. Old American argues that an employer insured by a workers’ compensation carrier cannot be held liable for penalties and attorney fees.
We affirm the denial of payment for a rolling walker and the workers’ compensation judge’s determination that Ms. Baul-lion’s work-related injuries are limited to her neck, shoulder and arm. We amend the workers’ compensation judge’s | ^determination with respect to Ms. Baul-lion’s future medical treatment. We also affirm the workers’ compensation judge’s award of penalties and attorney fees against Old American for failure to authorize the medical treatment recommended by Ms. Baullion’s treating physician. We reverse the judgment of the workers’ compensation judge insofar as she found Ms. Baullion is not entitled to supplemental earnings benefits. This judgment is amended to award supplemental earnings benefits at a zero-base earning capacity from the date of the termination of the award.
I.

ISSUES

The issues presented for review are:
(1) whether the workers’ compensation judge failed to address an issue properly before her concerning Ms. Baullion’s rolling walker and whether this court can make a de novo review determination thereon;
(2) whether the workers’ compensation judge erred in the determination of Ms. Baullion’s disability status;
(3) whether the workers’ compensation judge was clearly wrong in finding that Ms. Baullion’s work-related injuries were limited to her neck, shoulder and arm problems;
(4) whether the workers’ compensation judge limited Ms. Baullion’s future medical treatment to one treating physician and to a one-time psychological evaluation and, if so, whether it was manifest error to do so; and,
(5) whether the workers’ compensation judge properly cast an insured employer with payment of penalties and attorney fees.
_kH.

FACTS

Ms. Baullion was employed with Old American as a warehouse manager. As warehouse manager, Ms. Baullion’s duties included loading and unloading the trucks that brought merchandise into the store as well as putting merchandise on store shelves for sale. Ms. Baullion began experiencing pain and numbness in her hands and arms while lifting boxes in May of 1993. At the time of her accident, Ms. Baullion had an average weekly wage of *571 $190.59 and a compensation rate of $127.06.
The following doctors have treated Ms. Baullion since May, 1993 when she first began experiencing problems with her hands: Dr. James E. Dowd, Jr.; Dr. Thomas Ford; Dr. William F. Foster, Jr.; Dr. Clark Gunderson; and Dr. Kevin E. Gorin. Ms. Baullion was also seen by Dr. Kip Patterson for a psychological evaluation in 1997 as well as Mr. William Stamp-ley, a rehabilitation counselor.
Ms. Baullion testified that not only did she manage the warehouse but she also sometimes worked as a secretary, worked on the sales floor and had bookkeeping duties that included doing the payroll, deposits and invoicing. To alleviate the pain in her hand, Dr. Dowd performed carpal tunnel surgery. In all, Ms. Baullion had two surgeries on her left wrist, two surgeries on her right wrist and one surgery on her thumb. After a diagnosis of cervical myeloradiculopathy, on October 2, 1995, Dr. Foster performed a two-level anterior cervical discectomy and fusion at the C5-6 and C6-7 spine levels. It was Dr. Foster’s opinion that the surgery would relieve Ms. Baullion’s neck pain. The surgical procedure was successful in stabilizing Ms. Baullion’s neck but not in ridding her of pain.
|4By August 4, 1997, Dr. Gorin was of the opinion that Ms. Baullion had reached maximum medical improvement. Dr. Go-rin concluded that Ms. Baullion could function at a sedentary to light duty capacity and that it would be difficult if not impossible for Ms. Baullion to ever return to “gainful employment in a competitive arena.” However, Dr. Gorin’s opinion regarding Ms. Baullion’s return to employment was based on her entire medical condition including her non-work-related injuries as well as her work-related injuries. After meeting with Ms. Baullion on January 19, 1999, Mr. Stampley, the rehabilitation counselor, recommended several positions which were presented to Dr. Gorin for his approval. Dr. Gorin gave his approval to two of the positions based upon a six-line description of the job duties provided by Mr. Stampley. In February of 1999, Dr. Gorin still recommended that Ms. Baullion receive a psychiatric or psychological evaluation for depression that he felt was due to Ms. Baullion’s chronic pain.
In March of 1999, Old American terminated weekly benefits to Ms. Baullion. A claim was filed on her behalf. In her written reasons for judgment, the workers’ compensation judge found Ms. Baullion capable of returning to a light-duty job and entitled to “treatment with her treating physician, Dr. Gorin, and treatment prescribed by Dr. Gorin, including but not limited to the psychiatric evaluation.” The workers’ compensation judge also cast Old American for payment of penalties in the amount of $2,000.00 and attorney fees in the amount of $5,000.00 for its failure to reasonably controvert Ms. Baullion’s claim that a psychiatric evaluation was necessary as recommended by Dr. Gorin, her treating physician. It is from this judgment that Ms. Baullion appeals. Old American answered Ms. Baullion’s appeal and claims that the workers’ compensation judge erred in finding that Ms. Baullion is entitled to an additional psychological evaluation and that it faded to reasonably | Rcontrovert its denial of that treatment recommendation. Old American additionally asserts that the workers’ compensation judge erred in casting it with payment of penalties and attorney fees.
III.
LAW AND DISCUSSION Standard of Review
Ah appellate court may not set aside the factual findings of a workers’ *572 compensation judge in the absence of manifest error or unless they are clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). “[Wjhere there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.” Id. at 844. However, a reviewing court may reverse a fact finder’s determinations if such factual findings are not reasonably supported by the record and are clearly wrong. Stobart v. State Through DOTD, 617 So.2d 880 (La.1993).
Authorization of the Rolling Walker and Limitation of Injuries
Ms. Baullion argues that the trial court committed manifest error by failing to address the issue of authorization for her use of a rolling walker. “As a general rule, where a judgment is silent with respect to any demand which was at issue in the case under the pleadings such silence constitutes a rejection of that demand.” Edwards v. Daugherty, 97-1542, p. 38 (La.App. 3 Cir. 3/10/99); 729 So.2d 1112, 1134, writs denied, 99-1393 and 99-1434 (La.9/17/99); 747 So.2d 1105. The trial court found that Ms. Baullion’s work-related injuries were limited to her neck, shoulder and arm problems. Therefore, it appears that the trial court’s rejection of IfiMs. Baullion’s demand for a rolling walker is based on its finding that Ms. Baul-lion’s work-related injuries do not necessitate use of a rolling walker. Ms. Baullion, on the other hand, asserts that the trial court erred in limiting her injuries to her neck, shoulder and arm problems. She contends that her knee and back problems are also work related. Thus, in determining the issue of whether the trial court erred in rejecting Ms. Baullion’s claim regarding the rolling walker, we must determine whether the trial court erred in limiting Ms. Baullion’s work-related injuries to her neck, shoulder and arm.
At his initial visit, Dr. Gorin diagnosed Ms. Baullion as suffering, among other ailments, with advanced degenerative osteoarthritis of her right knee. In his report of October 14, 1997, Dr. Gorin stated that “one of [Ms. Baullion’s] major limitations is her right knee.... ” Dr. Go-rin was of the opinion that she may require a right total knee replacement. Furthermore, Dr. Gorin concluded that Ms. Baullion’s knee problems were not “worker’s compensation related.” In 1996, Dr. Foster diagnosed Ms. Baullion as suffering from “diffuse disc bulges and osteophyte complexes at C5-6 and C6-7 ... [with] associated ligamentum flavum hypertrophy and ... a moderate central canal stenosis ... [and] central cord deformity at [those] levels.”
By December of 1999, Dr. Foster noted that x-rays revealed mild degenerative changes throughout Ms. Baullion’s lumbar spine and a narrowed disc at L5-S1, L2-3 and Ll-2. However, in his report of December 8, 1999, Dr. Foster mentioned that her back problems were not a result of her work-related injury. Moreover, Ms. Baul-lion testified that she was told that her problem with walking was due to her back and her knee. Furthermore, Ms. Baullion testified that she never injured her back or her knees while working for Old American. Ms. Baullion also |7testified that in May of 1993, she had no problems with any part of her body other than her wrists and arms, and that her knee started giving her problems in 1995, some time after her employment with Old American ended. Considering the foregoing facts, we find that the trial court did not err in finding that Ms. Baullion’s work-related injuries were limited to her arm, shoulder and neck problems *573 and in rejecting Ms. Baullion’s demand for the use of a walker.
Plaintiffs Disability Status
Ms. Baullion claims that she is permanently totally disabled or temporarily totally disabled due to the physical problems she suffers. Ms. Baullion further argues that if she is not disabled permanently or temporarily, then she is at least entitled to supplemental earnings benefits (SEB). To the contrary, Old American asserts that, absent Ms. Baullion’s non-work-related knee and back problems, she is not permanently totally disabled or temporarily totally disabled.
“An employee in a worker’s compensation action has the burden of establishing a causal link between the work-related accident and the subsequent disabling condition.” Miller v. Roger Miller Sand, Inc., 94-1151, p. 6 (La.11/30/94); 646 So.2d 330, 334. In the present case, the evidence clearly supports the trial court’s determination that Ms.. Baullion’s work as a stockroom manager and sometime secretary/bookkeeper for Old American caused her to develop carpal tunnel syndrome in her wrists as well as problems with her shoulder and arm. The evidence is also clear that the problems Ms. Baullion is experiencing with her knee and back are medical conditions unrelated to her former employment. In Miller, the plaintiff suffered a work-related injury due to a ten- to fifteen-foot fall into a ditch. Subsequently, the plaintiff suffered a stroke, and disability benefits were terminated |sbecause a non-work-related medical condition rendered the plaintiff completely and totally disabled. However, the supreme court stated that “the mere fact that the stroke, and not the work injury, rendered plaintiff totally disabled does not negate the fact that the work injury left plaintiff with some form of disability.” Id. at 334.
Similarly, in the present case, after Mr. Stampley provided Ms. Baullion with vocational rehabilitation services on February 19,1999, Ms. Baullion’s benefits for temporary total disability were terminated on March 3, 1999. To determine if Ms. Baul-lion is entitled to continuing disability payments, we must determine the extent of her disability caused by the work-related injuries, giving no consideration to any additional disability caused by her knee and back problems. Old American argues that Ms. Baullion’s knee and back problems contribute to her employment disability as opposed to the work-related injuries to her shoulder, neck and arm. Old American further argues that since Ms. Baul-lion’s knee and back problems are not work related it should not have to pay workers’ compensation benefits for any disability Ms. Baullion suffers as a result of her knee and back conditions. With respect to the payment of disability benefits, the workers’ compensation judge agreed with Old American, concluding that “[njothing in the record points to the fact that claimant is not capable of returning to a light duty job.”
Dr. Gorin first saw Ms. Baullion in May of 1997, and noted that she had pain at the base of her neck, skull and left trapezius muscle. Dr. Gorin ordered a psychological assessment of Ms. Baullion be done by Dr. Patterson because she had been in pain for over two years. Dr. Patterson’s report indicated “interpersonal distress,” but he did not recommend continued psychological treatment. Dr. Gorin testified that although Ms. Baullion’s neck operations were successful in stabilizing her neck, the procedures were unsuccessful in ridding her of neck pain. At the end l3of May, a functional capacity evaluation was conducted that revealed Ms. Baullion’s physical demand level was sedentary and that a musculoskeletal conditioning pro *574 gram was necessary if she should return to work. Thus, in June of 1997, Dr. Gorin recommended that Ms. Baullion could return to work at the level of sedentary/light duty; however, he cautioned that his assessment did not mean that she would be able to work without pain. Dr. Gorin conceded that if Ms. Baullion was not suffering from knee and back problems, she would have fewer difficulties in obtaining employment in a competitive arena. As of the date of his deposition taken on October 13, 2000, Dr. Gorin recommended that Ms. Baullion undergo a psychological evaluation because “[o]ver the last six months or so of treatment, the last three visits I would say, the patient has appeared more depressed, more tearful, more emotionally withdrawn ... more frustrated with her inability to maintain her previous level of functional activities.” Dr. Gorin also testified that in June of 1999, he prescribed an antidepressant for Ms. Baullion. Additionally, Dr. Gorin testified that there is a strong relationship between experiencing chronic pain and the development of depression and that he is inclined to believe that Ms. Baullion’s depression is work related due to the pain she is experiencing from her work-related injuries. Dr. Gorin believes a psychological evaluation is necessary to determine the exact cause of Ms. Baullion’s depression.
Our review of the medical testimony and other evidence leads us to the conclusion that Ms. Baullion has proven by a preponderance of the evidence that she is unable to return to her former employment as a result of her carpal tunnel syndrome, neck, and shoulder problems. The evidence does not, however, support Ms. Baullion’s claim that she is totally and permanently disabled as a result of arm, neck, and shoulder problems. In order to prevail on such a claim:
I io[T]he employee [must] prove[ ] by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
La.R.S. 23:1221(2)(c) (emphasis added).
Ms. Baullion has failed to meet this exacting burden of proof because she has failed to prove by clear and convincing evidence that her work-related injury precludes her from engaging in any type of employment. Furthermore, the medical evidence establishes that, although Ms. Baullion is currently somewhat disabled, that condition is due to the increased disability caused by her knee and back problems, and not solely to the injuries she suffered while employed by Old American.
The evidence does, however, support Ms. Baullion’s claim for supplemental earnings benefits under La.R.S. 23:1221(3). In order to prevail on such a claim, the supreme court explains: “[T]he injured employee must prove by a preponderance of the evidence that the work-related injury has resulted in his or her inability to earn wages equal to ninety percent or more of the wages he or she was earning at the time of the injury.” Miller, 646 So.2d at 335. The supreme court further stated:
Once the plaintiff has met this initial burden of proving entitlement to supplemental earnings benefits, the burden of proof shifts to the employer if it wishes to prove the employee is earning less than he or she is able to earn. The employer bears the burden of proving *575 that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in the employee’s or the employer’s community or reasonable geographic region.
Id. at 335-36.
The Louisiana Supreme Court in Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97); 696 So.2d 551, concluded that an employer may discharge its burden of proving job availability by establishing, at a minimum, the following by competent evidence: (1) the existence of a suitable job within the employee’s physical capabilities and within the employee’s or employer’s community or reasonable geographic region, (2) the amount of wages that an employee with the claimant’s experience and training can be expected to earn in that job, and (3) an actual position is available for that particular job at the time that the claimant received notification of the job’s existence.
Mr. Stampley, the vocational rehabilitation counselor, met with Ms. Baullion one time on December 10,1998. Mr. Stampley never met or talked with Ms. Baullion’s treating physician, Dr. Gorin. On December 16, 1998, Mr. Stampley reported that, given Ms. Baullion’s work history, educational level and physical limitations, she was employable. At the workers’ compensation hearing, Mr. Stampley testified that he focused on light-duty jobs and conducted a job search from January 15, 1999 through January 18, 1999. A letter dated January 19, 1999, and sent to Ms. Baul-lion’s attorney, lists ten jobs that Mr. Stampley felt were suitable for Ms. Baul-lion. The jobs included two cashier/checker jobs, a telephone answering service alarm monitoring job, five jobs dealing with food preparation, and two guest room attendant jobs. The wages for the listed jobs ranged from a low of $5.15 per hour to a high of $7.00 per hour.
Mr. Stampley further testified that the jobs were available when he sent the list of jobs to Ms. Baullion’s attorney. Ms. Baul-lion’s attorney mailed a certified letter to Mr. Stampley on January 28,1999, informing Mr. Stampley that Ms. Baullion had been prescribed a rolling walker. Because the information regarding | i^Ms- Baullion’s use of a rolling walker was not available at the time of Mr. Stampley’s original employment assessment, that fact was not taken into consideration by Mr. Stampley in his original job analysis. Mr. Stampley testified that out of the ten jobs he listed, Ms. Baullion would be able to perform only two of the jobs: cashier/checker at Piccadilly Restaurant and telephone answering service/alarm monitor. Mr. Stampley also testified that as of January 19, 1999, all of the jobs listed were open and available. Mr. Stampley further testified that he rechecked with the potential employers on February 4, 1999, and some of the jobs had been filled. However, this information was not made known to Ms. Baullion.
Although Dr. Gorin agreed that Ms. Baullion could do a cashier/checker type job based on the short description of the job duties provided him by Mr. Stampley, he explained that very little in the work arena is actually sedentary or light duty. Dr. Gorin further testified that his patients who have taken cashier jobs report that often they end up doing more than just cashier work and consequently reinjure themselves. Dr. Gorin testified that before “okaying” a certain job, he likes to know exactly what job duties the patient will or may have. He further testified that for a patient like Ms. Baullion, if the job description includes “additional duties as needed,” he would reject that as a job Ms. Baullion would be able to perform. Dr. Gorin also testified that because of Ms. *576 Baullion’s condition, she would probably not last long in any job because she would have to take many days off of work due to pain — thus, his conclusion that it would be “difficult, if not impossible, for [Ms. Baul-lion] to ever maintain gainful employment in a competitive arena.” Although Dr. Go-rin did not specify whether the pain Ms. Baullion is experiencing comes solely from her work-related injuries or is inclusive of her knee and back problems, he did testify that he feels that Ms. Baullion is depressed, that chronic pain often brings |1sabout depression and that her depression is work related. Based on the foregoing, we find that Ms. Baullion is entitled to supplemental earnings benefits at a zero-base earning capacity.
Penalties and Attorney Fees
The workers’ compensation judge found Old American to be arbitrary and capricious for failure to approve the medical treatment recommended by Dr. Gorin, i.e., the psychiatric evaluation. Old American asserts that Ms. Baullion is not entitled to penalties and attorney fees. In its answer, Old American also asserts that it was improper for the workers’ compensation judge to cast it, an insured employer, with payment of penalties and attorney fees. To support its contention, Old American cites La.R.S.23:1201.2 that provides in part: “[A]ny employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney fees.... ” It appears, additionally, that pursuant to La. R.S.23:1201.2, Old American would be limited to the payment of attorney fees for such actions. However, as noted above, the trial court did not award penalties and attorney fees for the discontinuation of benefits as provided in La.R.S. 23:1201.2, but awarded penalties and attorney fees for “failure to approve the treatment recommended by Dr. Gorin.” Thus, La.R.S. 23:1201with respect to failure to authorize medical benefits is applicable.
The court in Watson v. Amite Milling Co., 560 So.2d 902, 906 (La.App. 1 Cir.), writ denied, 567 So.2d 614 (La.1990) (quoting Hall v. McDonald, 537 So.2d 328, 332 (La.App. 1 Cir.1988)), observed:
[G]iven the facts, medical and otherwise, known to the employer or his insurer, did the employer or insurer have |ua reasonable basis to believe that medical expenses and compensation benefits were not due the employee. Stated another way, did the employer or his insurer have sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant.
(Emphasis added).
An award of penalties and attorney fees depends on the facts known to the employer at the time of its action. Workers’ compensation law provides that an employer may reasonably controvert a disputed claim for medical benefits. La.R.S. 23:1201(F)(2). An “employer must rely on competent medical advice when the decision to deny medical treatment is made.” Harrington v. Coastal Constr. & Eng’g, 96-681, p. 3 (La.App. 3 Cir. 12/11/96); 685 So.2d 457, 459, writ denied, 97-0109 (La.3/7/97); 689 So.2d 1375. Further, while we agree with Harrington, we note that lay evidence is equally compelling in a determination of the need for medical treatment.
Our review of the record reveals that at the time of denial, Old American did not have sufficient factual and medical information to warrant refusal of Dr. Go-rin’s recommended medical treatment, i.e., the psychiatric evaluation. In 1997, Tim Naquin, of Lake Charles Physical Thera *577 py, issued a report that Ms. Baullion was overwhelmed with neck, arm and wrist problems and appeared depressed. Dr. Foster also noted in that same year that Ms. Baullion had residual carpal tunnel syndrome and that as a result Ms. Baullion was severely depressed. Dr. Gorin testified that since the early part of the year 2000, he had recommended that Ms. Baul-lion undergo psychological evaluation due to her increased depression and anxiety attacks. Dr. Gorin further testified that sometimes, due to lack of improvement from the initial injury, five or ten years later patients begin to become more depressed. Dr. Gorin had placed Ms. Baul-lion on an antidepressant in 1999, but wanted an evaluation to determine the exact cause of her depression. It was Dr. Gorin’s opinion, having 11Ktreated Ms. Baul-lion every two months for over three years since 1998, that her depression was related to her work injury. Thus, we find that the workers’ compensation judge did not err in concluding that Old American is liable for the payment of penalties and attorney fees for its failure to authorize the medical treatment requested by Ms. Baullion’s treating physician.
Old American also asserts that the trial court erred in casting it, an insured employer, as opposed to its insurer, with payment of the aforementioned penalties and attorney fees. We disagree. La.R.S. 23:1201(F)(1) provides:
Such penalty and attorney fees shall be assessed against either the employer or the insurer, depending upon fault. No workers’ compensation insurance policy shall provide that these sums shall be paid by the insurer if the workers’ compensation judge determines that the penalty and attorney fees are to be paid by the employer rather than the insurer.
Since the workers’ compensation judge east Old American with payment of the penalties and attorney fees, apparently the judge found that Old American was at fault for the failure to authorize payment for the treatment recommended by Dr. Gorin for Ms. Baullion. We find no manifest error in the workers’ compensation judge’s determination on this issue. •
Psychological Evaluation/Treatment
Ms. Baullion contends that the trial court erred in limiting her future medical treatment to one treating physician and to a one-time psychological evaluation. In his deposition, Dr. Gorin testified that Ms. Baullion needed to undergo a psychiatric evaluation so that the cause of her deep depression could be discovered. The trial court stated the following in its February 14, 2001, judgment:
IT IS ORDERED that claimant is entitled to undergo a psychological evaluation as' recommended by her treating physician, Dr. Kevin Gorin.
|1fiIn its written reasons for judgment also dated February 14, 2001, the trial court stated:
Claimant' is therefore, entitled to treatment with her treating physician, Dr. Gorin, and treatment prescribed by Dr. Gorin, including but not limited to the psychiatric evaluation.
Thus, it appears that there is a conflict between the trial court’s judgment and written reasons for ruling. It appears that in its written reasons for judgment, the trial court did not limit Ms. Baullion’s future medical treatments to one psychological evaluation. However, where there is conflict between the written reasons for ruling and a judgment, the latter prevails. Jeansonne v. Am. Native Constr., 97-1228 (La.App. 3 Cir. 3/6/98); 710 So.2d 306; Thurman v. Thurman, 521 So.2d 579 (La.App. 1 Cir.1988). Thus, even though it *578 appears that the written reasons for judgment do not limit Ms. Baullion’s future medical treatment, the judgment does; therefore, we will review the propriety of the trial court’s limitation of Ms. Baullion’s future medical treatment.
Dr. Gorin testified that he thought that the chronic pain Ms. Baullion experiences from her neck, arm and shoulder is the cause of her present depression and anxiety. Ms. Baullion’s neck, arm and shoulder problems are work-related injuries. Dr. Gorin further testified that he felt a psychiatric evaluation was in order to determine the exact cause of Ms. Baul-lion’s depression so as to rule out causes other than her chronic pain. The workers’ compensation judge is not a medical professional. By limiting Ms. Baullion to “a” psychological evaluation, the trial court did not allow for the possibility that Ms. Baul-lion’s depression, as observed by her treating physician, is work related due to the chronic pain in her neck, arm and shoulder and would require further treatment, or that she would need continued treatment from a psychiatrist authorized to prescribe medication as opposed to a |17psychologist who is not authorized to dispense drugs. Therefore, we find that the trial court abused its discretion in limiting Ms. Baul-lion to one psychological evaluation.
IV.

CONCLUSION

For the reasons assigned, the judgment of the trial court is reversed insofar as it limited claimant’s future medical benefits to one psychological evaluation and terminated disability benefits on March 3, 1999. The judgment is amended to award supplemental earnings benefits at a zero-base earning capacity from the date of termination. The judgment of the workers’ compensation judge is affirmed insofar as she ordered defendant, Old American, to pay penalties and attorney fees for its failure to authorize the medical treatment recommended by claimant’s treating physician and also affirmed insofar as it limited claimant’s work-related injuries to her arm, shoulder and neck, and insofar as it denied claimant authorization for the use of a rolling walker. We also affirm the trial court’s denial of an award of penalties and attorney fees for termination of benefits and failure to authorize the use of a rolling walker. Defendant is assessed with all costs of these proceedings.
AMENDED AND, AS AMENDED, AFFIRMED IN PART; REVERSED IN PART.