# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 13-919

JANICE SPIKES

VERSUS

LOUISIANA COMMERCE & TRADE ASSOCIATION, ET AL.

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 3
PARISH OF CALCASIEU, NO. 12-01729
CHARLOTTE A. L. BUSHNELL, WORKERS' COMPENSATION JUDGE

**********

## ELIZABETH A. PICKETT
## JUDGE

**********

Court composed of Elizabeth A. Pickett, James T. Genovese, and Phyllis M. Keaty, Judges.

AFFIRMED.

Maria Anna Losavio
Losavio Law Office, LLC
1821 MacArthur Drive
Alexandria, LA 71315
(318) 767-9033
COUNSEL FOR PLAINTIFF-APPELLANT:
    Janice Spikes

**Stephen Edward Broyles**
**Glusman, Broyles & Glusman, LLC**
**P. O. Box 2711**
**Baton Rouge, LA 70821**
**(225) 387-5551**
**COUNSEL FOR DEFENDANTS-APPELLEES:**
    **Tri-Parish Rehabilitation Hospital, LLC d/b/a Rehabilitation Hospital**
    **of Dequincy**
    **Louisiana Commerce & Trade Association Self Insurer's Fund**

**PICKETT, Judge.**

A workers' compensation claimant appeals a judgment rendered that denies her claims for medical treatment, penalties, and attorney fees. The claimant's employer and its workers' compensation insurer answer the appeal and assign errors. Finding no errors, we affirm the judgment in all respects and deny the relief sought on appeal.

**FACTS**

On February 25, 2008, Janice Spikes injured her back in the course and scope of her employment with Tri-Parish Rehabilitation Hospital, LLC d/b/a Rehabilitation Hospital of DeQuincy. She underwent a bilateral lumbar laminectomy at L3-4 by Dr. Clark Gunderson in July 2011. Dr. Gunderson referred Ms. Spikes to psychologist James W. Quillin in August 2011 to help her adjust to pain she continued to suffer after the surgery.

In January and June 2012, Dr. Quillin submitted requests to her employer's insurer, Louisiana Commerce and Trade Association Self Insurer's Fund (LCTASIF), for treatment in the forms of biofeedback, group psychotherapy, psychological testing, and individual psychotherapy to address Ms. Spikes' pain syndrome. LCTASIF denied the requested treatment. He then filed Disputed Claims for Medical Treatment with the Office of Workers' Compensation Administration Medical Services (Medical Services), appealing the denied treatment. Medical Services denied the appeals.

Dr. Quillin also recommended that Ms. Spikes see a pain management specialist. Ms. Spikes scheduled an appointment with Dr. Michael Dole, a pain management specialist, but the defendants would not approve payment for the appointment.

In March 2012, Ms. Spikes filed a Disputed Claim for Compensation against the defendants, asserting bona fide disputes existed concerning: 1) the medical treatment recommended by Dr. Quillin; 2) referral to a pain management specialist; 3) failure to authorize treatment; and 4) penalties, attorney fees, court costs, and expenses. Thereafter, Dr. Gunderson sought approval from the defendants for a referral of Ms. Spikes to pain management specialist, Dr. Stephen Katz, for one visit, which was denied. Dr. Gunderson appealed the denial to Medical Services; his appeal was denied.

The defendants filed an exception of no cause of action regarding Ms. Spikes' claim that pursuant to La.R.S. 23:1121(B), she has the right to consultation with a pain management specialist regardless of whether La.R.S. 12:1203.1 and the MTG apply to her request.

At trial, Ms. Spikes argued La.R.S. 23:1203.1 and the Medical Treatment Guidelines (MTG)[1] do not apply to her claims because she was injured prior to the adoption of the statute. She also asserted the defendants' denial of her claims was arbitrary and capricious and sought penalties and attorney fees. Alternatively, Ms. Spikes asserted that if La.R.S. 23:1203.1 was deemed applicable to her claims, the clear and convincing standard of review provided in Section K[2] of the statute

---

[1] The Louisiana Legislature passed La. R.S. 23:1203.1 in 2009, and the Medical Treatment Guidelines became effective on July 13, 2011. The MTGs were promulgated pursuant to La.R.S. 23:1203.1(B), which provides for the establishment of a Medical Treatment Schedule.

[2] Louisiana Revised Statutes 23:1203.1(J)(1) directs any party aggrieved with a payor's action on a medical provider's request for authorization to file an appeal with the medical director or associate director. Section K provides for an appeal of the medical director or associate medical director's decision and that such decision may be overturned if clear and convincing evidence shows it was "not in accordance with the provisions of this Section."

does not apply because Medical Services' reviews of her claims were not performed by the medical director as provided in Section J(1) of the statute.

The workers' compensation judge (WCJ) issued a Judgment which held that the decisions issued by Medical Services that were rendered by a physician other than the medical director did not comply with the provisions of the MTG and that the denial of Ms. Spikes' request for a consultation with Dr. Katz was "inappropriate." The WCJ's Judgment did not address Ms. Spikes' other claims or the defendants' exception of no cause of action.

Ms. Spikes appealed the Judgment. On appeal, she assigns four errors with the Judgment and requests attorney fees for work performed on appeal. The defendants answered the appeal and assign five errors with the Judgment.

## ASSIGNMENT OF ERRORS

Ms. Spikes assigns the following errors:

1. The trial court's judgment is silent as to the issue regarding medical treatment with psychologist Dr. Quillin; therefore, it is presumed to have been rejected by the trial court. The trial court erred in not ordering defendants to authorize medical treatment with Dr. Quillin, in particular, Behavioral Pain Management (group therapy, coping skills, biofeedback-peripheral blood flow, biofeedback-SEMG directed to specific sight of pain) with psychologist Dr. Quillin and psychological testing (MPI and MMPI tests), and psychotherapy post treatment follow-up as recommended by Dr. Quillin.

2. The trial court judgment is silent as to Janice Spikes' request for penalties and attorney[] fees; therefore, it is presumed to have been rejected by the trial court. The trial court erred in not awarding penalty and attorney[] fees for defendants' refusal to authorize medical benefits with her choice of pain management and psychological treatment recommended by Dr. Quillin.

3. The trial court's judgment is silent as to Janice Spikes' request for costs; therefore, it is presumed to have been rejected by the trial court. The trial court erred in not awarding Janice Spikes' costs.

4. [La.R.S. 23:1203.1] is substantive in nature and therefore it applies prospectively only.

3

The defendants assign the following errors with the WCJ's judgment:

1. The Office of Workers' Compensation failed to rule on the appeals of the medical director's decisions and should have denied the request for treatment recommended by Dr. Quillin.

2. The Office of Workers' Compensation erred in overruling appellees' objections to the admissibility of evidence not submitted to the medical director.

3. The Office of Workers' Compensation erred in not taxing as costs payable by the appellant expenses associated with the depositions of Dr. Fenn[3] and Dr. Datz.

4. The Office of Workers' Compensation erred in not denying outright the claims for penalties and attorney[] fees sought by the appellant.

5. The Office of Workers' Compensation erred in denying appellees' exception of no cause of action to the appellant's request for choice for approval of choice of physician.

## DISCUSSION

Central to this appeal is whether La.R.S. 23:1203.1 applies to claims for medical treatment submitted by claimants who were injured before the statute became effective. Because cases pending before the Louisiana Supreme Court presented the same issue when this appeal was lodged, we issued a Stay Order in this matter on January 27, 2014, staying the appeal until the supreme court decided those cases. *Spikes v. Louisiana Commerce & Trade Ass'n Tri-Parish Rehab. Hosp., LLC d/b/a Rehab. Hosp. of Dequincy*, 13-919 (La.App. 3 Cir. 1/27/14) (unpublished order). In *Church Mutual Insurance Co. v. Dardar*, 13-2351, p. 13 (La. 5/7/14), ___ So.3d ___, ___, the supreme court determined that "La.R.S. 23:1203.1 is a procedural vehicle . . . for enforcing a substantive right . . . [and] does not impinge on or lessen the substantive right to necessary medical treatment conferred by La.R.S. 23:1203." Section 1203.1 is procedural in nature;

---

[3] Dr. Fenn was deposed in connection with Dr. Gunderson's request for approval to refer Ms. Spikes to a pain management specialist.

4

therefore, it "applies prospectively to all requests for medical treatment and/or disputes arising out of requests for medical treatment arising after the effective date of La.R.S. 23:1203.1 and the medical treatment schedule, regardless of the date the accident." *Id.* *See also Cook v. Family Care Services, Inc.*, 13-2326, 13-2351 (La. 5/7/14), ___ So.3d ___.

## STANDARD OF REVIEW

Ms. Spikes contends the clear and convincing standard of review provided in La.R.S. 23:1203.1(K) is not applicable here because a Medical Services Reviewer, not the medical director himself, reviewed Dr. Quillin's appeals of the defendants' denials for behavioral pain management. The WCJ did not directly address the issue of whether the clear and convincing standard of review applied to Ms. Spikes' claims. Rather, the WCJ held that because the medical director did not consider Dr. Quillin's appeals and render the decisions thereon, the decisions did not comply with the MTG. Therefore, the WCJ did not consider them to be appeals.

When a medical provider appeals the action taken on a request for authorization of medical treatment, Subsection (J)(1) specifies: "The medical director or associate medical director shall render a decision . . . ." That such decisions are to be made by the "medical director or associate medical director" is reiterated in Section K which further provides:

> After the issuance of the decision by the medical director or associate medical director of the office, any party who disagrees with the decision, may then appeal by filing a "Disputed Claim for Compensation", which is LWC Form 1008. The decision may be overturned when it is shown, by clear and convincing evidence, the decision of the medical director or associate medical director was not in accordance with the provisions of this Section.

5

The legislature specified in these provisions that reviews of requests for authorizations for medical treatment are to be made by the medical director or associate medical director and defined who these individuals are. La.R.S. 23:1203.1(A)(1), (4). The individual who reviewed Dr. Quillin's appeals of the defendants' denials of authorization for the medical treatment he requested is neither the medical director nor the associate medical director. Accordingly, we find no error with the WCJ's determination that the decisions of Medical Services on Dr. Quillin's appeals do not comply with the MTG and conclude that the clear and convincing standard of review does not apply to Dr. Quillin's appeals to Medical Services or to this appeal.

The manifest error/clearly wrong standard of review applies to the factual findings made by the WCJ. *Clay v. Our Lady of Lourdes Reg'l Med. Ctr., Inc.*, 11-1797 (La. 5/8/12), 93 So.3d 536. Accordingly, we will review the record in its entirety to determine not whether the WCJ was wrong, but whether the record reflects a reasonable basis for the WCJ's decision. *Id.*

*Evidentiary Issue*

The defendants assign error with the WCJ's admission of certain medical evidence. We address this issue at the outset because it determines whether the evidence is properly before this court for consideration. Ms. Spikes deposed Drs. Quillin and Gunderson in preparation for trial. The defendants objected to the admission of those depositions and certain medical records she offered into evidence at trial because they were not submitted to and considered by Medical Services when it reviewed the defendants' denials of the doctors' requests for treatment. The WCJ allowed the evidence to be admitted; the defendants assert the WCJ erred in doing so.

6

Louisiana Code of Evidence Article 702 governs the admissibility of expert testimony. It provides, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." However, WCJs are not "bound by technical rules of evidence other than as herein provided, but all findings of fact must be based upon competent evidence." La.R.S. 23:1317(A).

Though workers' compensation judges are accustomed to reviewing medical records in connection with claims they must decide, they are not medical experts, and expert testimony could reasonably be needed to assist them in the understanding of the application of the newly-applicable MTG to the medical evidence at issue. Additionally, the defendants were not prejudiced by the admission of the depositions because the WCJ rejected Ms. Spikes' claims for the treatment recommended by Dr. Quillin. Furthermore, the supreme court's decision in *Dardar*, ___ So.3d ___, had not been rendered and the possibility that the MTG did not apply to Ms. Spikes' claims existed at that time. For these reasons, we find no error with the admission of Dr. Quillin's deposition and medical records.

We also find no error with regard to Dr. Gunderson's deposition and medical records because, as discussed below, uncertainty surrounded the issue of whether or not a claimant's right to choose a treating physician in any specialty was affected by La.R.S. 23:1203.1(I).

*Ms. Spikes' Assignments of Error*

> *Behavioral Pain Management*

Ms. Spikes first assigns error with the WCJ's failure to address her claim for behavioral pain management as recommended by Dr. Quillin. As Ms. Spikes noted, claims presented but not addressed in the Judgment are presumed denied. *M.J. Farms, Ltd. v. Exxon Mobil Corp*., 07-2371 (La. 7/1/08), 998 So.2d 16.

Dr. Gunderson referred Ms. Spikes to Dr. Quillin who first saw her on September 6, 2011. Testing by Dr. Quillin showed she had "rather severe depression with anxiety" and substantial dysfunctional pain adjustment complicated by some underlying paranoia. He treated her depression and anxiety with medication. Dr. Quillin indicated early in his treatment that Ms. Spikes might need behavioral pain management if her pain adjustment was poor, and he initiated some cognitive behavioral therapy to provide her some of relief. In general, his notes discussed her depression more than her pain, though he regularly referenced the need for behavioral pain management, and in November 2011, he referred Ms. Spikes to Dr. Dole, a pain management specialist.

Dr. Quillin filed requests with the defendants on January 10, 2012, and June 27, 2012, for Group Psychotherapy/Coping Skills; Biofeedback Peripheral Blood Flow; Biofeedback SEMG; Psychological Testing Post Treatment MMPI and MPI, and Psychotherapy Post Treatment Follow-Up. Dr. Geralyn Datz, a psychologist, performed a utilization review of Dr. Quillin's request. She contacted Dr. Quillin to discuss his initial request. After speaking with him, Dr. Datz recommended that a portion of the requested treatment, i.e., one-half of the Biofeedback Peripheral Blood Flow and one-half of the Biofeedback SEMG, be approved, and it was. The remainder of the recommended treatment was denied. The denial referenced the

MTG and identified specific reasons why only a portion of the requested treatment was approved. The defendants denied the second request on the basis that it lacked objective evidence of demonstrated progress with the previously approved treatment. The denial noted that the MTG recommend ongoing treatment to address anxiety and depressive issues provided the patient meets specific criteria of a functional objective improvement and that no objective evidence demonstrated Ms. Spikes had progressed with the previously approved biofeedback.

Dr. Quillin appealed the denials; Medical Services denied his appeals. With regard to Dr. Quillin's January 2011 request, the denial noted the previously approved treatment and determined the request went beyond the MTG for psychological intervention. Specifically, the denial observed that some patients require treatment beyond the provisions contained in the MTG, but approval of such treatment requires documentation by a treating physician that focuses "on objective functional gains afforded by further treatment." Medical Services' denial of Dr. Quillin's second request identified in more detail specific MTG applicable to the request and documentation required to justify the treatment recommended for a patient in Ms. Spikes' circumstances.

There is no indication in the record that any documentation, other than his notes, accompanied Dr. Quillin's request to the defendants for implementation of the behavioral pain management he recommended for Ms. Spikes. When appealing the second denial, Dr. Quillin did, however, quote a portion of the defendants' denial of his request then noted:

> It appears that the review confused pharmacologic and CBT treatment rendered for management of injury related depression with a request for behavioral pain management. Please be advised that this patient has **never** received either behavioral pain management or biofeedback, at this clinic or any other clinic previously.

He requested the denial be overturned because "the stated reason for the denial [was] based on erroneous facts or assumptions." He also stated "that the requested services are appropriate under the OWCA Medical Guidelines . . . under Chapter 21, Subsection A, #9(a), (c) and (e) ii.-iv."

We have reviewed Ms. Spikes' medical records, the denials of treatment by the defendants and Medical Services, the cited portions of the MTG, and the depositions of Drs. Quillin and Datz. The only documents in the record pertaining to Dr. Quillin's requests for treatment are his notes and the letter quoted above. Dr. Quillin's notes do not cite the MTG substantiating his requests. In his note dated February 2, 2012, Dr. Quillin referenced the approval of four biofeedback units instead of the behavioral pain management he requested and explained: "We are not initiating biofeedback at this time as this patient needs behavioral pain management. Without same, her prognosis for effective management is essentially nil given the multiple psychologic complications to her condition." Dr. Quillin also observed that he believed the lack of approval "may have resulted from a misunderstanding of the medical treatment guidelines." There is no indication, however, that he specifically addressed the issue in his appeal to Medical Services or his second request for treatment.

In his deposition, Dr. Quillin explained what MTG applied to his requests and why the denial of his requests was not justified under the MTG in light of the medical evidence submitted. He testified that based on the defendants' denials of his requests, he believed they "did not understand what we were asking and/or what had been done." Yet, he did not clearly state in his appeal to Medical Services what treatment had been provided to Ms. Spikes and why the treatment he

sought to have approved was necessary, and there is no evidence he explained that in his second request for treatment to the defendants.

Dr. Quillin recognized that the MTG regarding behavioral pain management can be confusing because not all the components of the treatment he recommended are addressed in one location, and various components of the treatment are contained in different sections. He explained that Section 2111(C)(2)(d) of the MTG provides that "biofeedback treatment must be done in conjunction with the patient's psychosocial intervention." Further, he acknowledged that Ms. Spikes received brief psychotherapy, as referenced in the defendants' denial, but asserted that it was to address her anxiety and depression, not her pain syndrome. According to Dr. Quillin, treating Ms. Spikes' depression is "not going to do the trick itself" because an integrated treatment plan that addresses her chronic pain and her depression is needed.

Dr. Datz controverted Dr. Quillin's testimony, explaining why the requests were denied and what evidence was lacking to substantiate the requests. Dr. Datz testified that although Dr. Quillin's notes seem to address Ms. Spikes' problems with depression more than her pain, she clearly understood, after speaking with him, that he was suggesting treatment for chronic pain. She further testified that she explained to him why his documentation was an issue and that a modified approval would be suggested because no functional evidence "of any type of psychological and/or pharmacological treatment being effective" for Ms. Spikes had been presented. Dr. Datz also testified that she suggested to Dr. Quillin that he document "how the intervention would help" Ms. Spikes and that if the documentation was provided, the request would probably be approved. Dr. Datz discussed more examples of why Dr. Quillin's request for treatment were

11

deficient and identified more than one way in which he could have addressed those deficiencies to have his request approved.

The WCJ is afforded considerable discretion in evaluating expert testimony, and the decision to accept the testimony of one expert witness over the conflicting testimony of another "can virtually never be manifestly erroneous." *Rosell v. ESCO*, 549 So.2d 840, 845 (La.1989). We find no manifest error in the WCJ's rejection of Ms. Spikes' claim that the denials of Dr. Quillin's requests for behavioral pain management were improper because they were based on competent medical evidence and expert testimony.

Ms. Spikes further contends that the MTG do not address behavioral pain management; therefore, the defendants' and Medical Services' denials of Dr. Quillin's request for such treatment were improper. As Dr. Quillin testified, while the MTG do not include a specific guideline that includes all the components for behavioral pain management in one section, they do provide guidelines for treating patients such as Ms. Spikes. Importantly, both Dr. Quillin and Dr. Datz testified regarding MTG applicable to the conditions identified in Ms. Spikes' medical records.

Ms. Spikes contends the WCJ erred in not awarding her penalties and attorney fees for the defendants' refusal to authorize the requests for behavioral pain management with Dr. Quillin. The defendants argue the opposite: the WCJ erred in not denying Ms. Spikes' request for penalties and attorney fees. We have considered Ms. Spikes' arguments and found the WCJ's rejection of her claims regarding the treatment requested by Dr. Quillin appropriate. Therefore, the WCJ's refusal to award attorney fees and penalties was not erroneous, and the defendants effectively received the result they seek.

12

*Referral to Pain Management Specialist*

Dr. Gunderson referred Ms. Spikes to Dr. Katz for pain management in December 2011 because she continued to suffer pain as a result of her 2008 injury. Ms. Spikes contends the defendants' refusal to authorize treatment with Dr. Katz violated La.R.S. 23:1121(B)(1), which gives workers' compensation claimants "the right to select one treating physician in any field or specialty."

In their exception of no cause of action, the defendants urged that Ms. Spikes had no cause of action to choose a pain management specialist because she had not established that such treatment was medically necessary as required by the MTG. The WCJ denied the exception before the trial began.

The evidence shows confusion arose after the adoption of La.R.S. 23:1203.1 regarding what, if any, impact it had on a claimant's right to choose a treating physician in any field or specialty as provided in Section 1121(B)(1).

Louisiana Revised Statutes 23:1203.1 provides in pertinent part:

I. After the promulgation of the medical treatment schedule, throughout this Chapter, and notwithstanding any provision of law to the contrary, medical care, services, and treatment due, pursuant to R.S. 23:1203, et seq., by the employer to the employee shall mean care, services, and treatment in accordance with the medical treatment schedule. Medical care, services, and treatment that varies from the promulgated medical treatment schedule shall also be due by the employer when it is demonstrated to the medical director of the office by a preponderance of the scientific medical evidence, that a variance from the medical treatment schedule is reasonably required to cure or relieve the injured worker from the effects of the injury or occupational disease given the circumstances.

In March 2013, the Office of Workers' Compensation Administration issued a bulletin to clarify "an injured employee's right to his/her choice of physician without prior approval through the 1010 Form, Utilization Review Process." *See* Medical Treatment Guidelines and Choice of Physician − Clarifications;

http://www.laworks.net/Downloads/OWC/COP_Bulletin.pdf.  The bulletin specifically notes that confusion existed regarding a claimant's right to choose a physician without the need for a 1010 Form.  It provides, in pertinent part:

> R.S. 23:1121(B)(1) gives an injured worker the right to his/her choice of physician in any field or specialty (including pain management), without the necessity of prior approval for the evaluation/consultation via a 1010 Form. However, all medical care provided to the injured worker, which may result from the evaluation, is subject to the requirement that it be medically necessary as per R.S. 23:1203(A). Any and all non-emergency medical care in excess of $750 which may be requested by the injured workers' choice of physician must be submitted in accordance with the Medical Treatment Guidelines on a 1010 Form per the Utilization Review Rules.

After this clarification was issued, the defendants authorized the requested referral to Dr. Katz.

Ms. Spikes seeks penalties and attorney fees for the defendants' failure to authorize the visit when requested.  Penalties and attorney fees are not warranted because of the uncertainty caused by the whether La.R.S. 23:1203.1 affected her right to choose a physician as provided in La.R.S. 23:1121(B)(1) and because the defendants authorized the referral once the issue was clarified.

### Costs

Lastly, Ms. Spikes assigns error with the WCJ's failure to award her costs. Whether to award costs was within the discretion of the WCJ.  La.R.S. 23:1317(B). The WCJ denied most of Ms. Spikes' requests for relief; accordingly, we find no abuse of discretion with the WCJ's denial of her request for costs.

### The Defendants' Assignments of Error

#### No Cause of Action

The defendants contend the WCJ erred in denying their exception of no cause of action.  They assert they denied Ms. Spikes' request for referral to a pain

14

management specialist on the basis that she did not establish treatment in that field is medically necessary for her work injury and, therefore, was not in accordance with the MTG. In light of the OWC's March 2013 clarification that an injured worker's choice of physician must be submitted in accordance with the MTG only if the evaluation or treatment sought exceeds $750, we find no error with the WCJ's denial of the exception.

### Costs of Depositions and Medical Records

The defendants contend the WCJ should have assessed Ms. Spikes with the costs they incurred taking the depositions of Dr. Datz and Dr. Paul E. Fenn in order to defend their denials of Drs. Quillin's and Gunderson's requests for treatment. We have determined the WCJ did not err in admitting the evidence; therefore, we find no abuse of discretion with the WCJ's failure to assess payment of the costs associated with the depositions as payable by Ms. Spikes. La.R.S. 23:1317(B).

### DISPOSITION

For these reasons, we find no error in the WCJ's Judgment, and it is affirmed. Each party is responsible for their own costs.

**AFFIRMED.**