# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 15-814


STEPHANIE LEMELLE ARDOIN

VERSUS

CALCASIEU PARISH SCHOOL BOARD


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 14-08203
SAM L. LOWERY, WORKERS COMPENSATION JUDGE

**********

## JOHN D. SAUNDERS
## JUDGE

**********

Court composed of John D. Saunders, Elizabeth A. Pickett, and John E. Conery, Judges.


**AFFIRMED.**

**Christopher M. Trahan**
**Raggio, Cappel, Chozen & Berniard**
**P. O. Box 820**
**Lake Charles, LA 70602**
**(337) 436-9481**
**COUNSEL FOR DEFENDANT/APPELLANT:**
   **Calcasieu Parish School Board**

**Thomas Allen Filo**
**Cox, Cox, Filo, Camel & Wilson, LLC**
**723 Broad Street**
**Lake Charles, LA 70601**
**(337) 436-6611**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Stephanie Lemelle Ardoin**

**SAUNDERS, Judge.**

This appeal arises out of a workers' compensation dispute pertaining to a request for medical treatment. Calcasieu Parish School Board (hereinafter "School Board") appeals the trial court's award of penalties and attorney fees to Stephanie Lemelle Ardoin (hereinafter "Claimant"). For the following reasons, we find no manifest error by the trial court and affirm its ruling on this issue.

## FACTS AND PROCEDURAL HISTORY

Claimant was injured in the course and scope of her employment with the School Board on January 18, 2013. Following the injury, the School Board began paying workers' compensation benefits to Claimant. Eventually, Claimant underwent a laminectomy and fusion at L4-5, which was performed by Clark Gunderson M.D., on November 11, 2013. Dr. Gunderson continued to provide Claimant with post-operative care, and Daniel Hodges, M.D. provided pain management care to Claimant following the procedure. Following the surgery, Claimant continued to experience ongoing pain. She repeatedly reported difficulty sleeping.

Eventually, on August 25, 2014, Dr. Gunderson prescribed an adjustable mattress. On September 17, 2014, Dr. Hodges also prescribed an adjustable mattress. Both prescriptions were faxed to FARA Insurance Services, the third-party administrator in the instant matter. Then, On November 12, 2014, Dr. Gunderson submitted a LWC-WC Form 1010 to FARA, who referred the request for medical treatment to WellComp Managed Care Services, Inc. (hereinafter "WellComp"), its utilization review company. On November 17, 2014, WellComp recommended denial of the request, stating:

> There is no medical rationale supporting the medical necessity of an adjustable bed submitted by Dr. Gunderson.

This request does not meet the Louisiana Workforce Commission Medical Treatment Guidelines based on the absence of required documentation to support requests for medical treatment.

The claim was denied; Claimant then submitted LWC-WC Form 1009, Disputed Claim for Medical Treatment, requesting that the Medical Director review the denial. On December 4, 2014, the Medical Director issued a decision denying the request for an adjustable bed. In its denial, the Medical Director cited the following provision from the Medical Treatment Guidelines: "'It is generally felt that large expense purchases such as spas, whirlpools, and special mattresses are not necessary to maintain function beyond the areas listed above.'" The Medical Director further explained: "The requested service is not supported in the [Medical Treatment Guidelines]; a variance was not requested, and no medical evidence demonstrating a variance from the medical treatment schedule is reasonably required is submitted."

Following the denial by the Medical Director, Claimant submitted a LWC-WC Form 1008-Disputed Claim for Compensation, requesting authorization for the requested treatment and penalties and attorney fees for arbitrary and capricious denial of the claim. Following the trial of the matter, on May 7, 2015, the workers' compensation judge (hereinafter "WCJ") found that the School Board failed to reasonably controvert the necessity for the adjustable bed, ordered the School Board authorize the prescription for the adjustable bed, taxed Dr. Gunderson's expert witness fee to the School Board, and cast the School Board with penalties and attorney fees in accordance with La.R.S. 23:1201. It is from this ruling that the School Board appeals. Claimant answered the appeal, requesting additional attorney fees for the cost of defending the appeal and for the School Board to be cast with the costs associated with the appeal.

2

## ASSIGNMENTS OF ERROR

On appeal, the School Board asserts the WCJ erred in:

1. awarding penalties and attorney fees; and

2. in taxing Dr. Gunderson's expert witness fee to the School Board.

## ASSIGNMENT OF ERROR NUMBER ONE

In its first assignment of error, the School Board asserts the WCJ erred in awarding penalties and attorney fees to Claimant. In support of this assertion, it argues "Dr. Gunderson . . . submitted nothing to indicate why he believed an adjustable bed was medically necessary for his patient, nor did he even specify what he meant by 'adjustable bed.'" In further support of this assertion, the School Board argues that "[Dr. Gunderson] supplied . . . no documentation to support the medical necessity of an adjustable bed." For the following reasons, we affirm the ruling of the WCJ on this issue.

An award of attorney fees and penalties is reviewed for manifest error. *Baullion v. Old Am. Pottery Co.*, 01-0562 (La.App. 3 Cir. 11/21/01), 801 So.2d 567. Thus, we review the record to determine not whether the WCJ was wrong, but rather whether the record, as a whole, reveals a reasonable basis for the WCJ's ruling. *Spikes v. Louisiana Commerce & Trade Ass'n*, 13-919 (La.App. 3 Cir. 7/2/14), 161 So.3d 755.

Louisiana Revised Statutes 23:1203(A) requires an employer to furnish an injured worker with "all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal." "It is well settled that the failure to authorize or pay for medical treatment equates to the failure to furnish benefits, which can subject an employer to penalties and attorney fees." *Romero v. Garan's, Inc.*, 13-482, p. 3 (La.App. 3 Cir. 8/6/14), 145 So.3d 1120, 1122.

The court in *Watson v. Amite Milling Co.,* 560 So.2d 902, 906 (La.App. 1 Cir.), *writ denied,* 567 So.2d 614 (La.1990) (quoting *Hall v. McDonald,* 537 So.2d 328, 332 (La.App. 1 Cir.1988)), observed:

> [G]iven the facts, medical and otherwise, known to the employer or his insurer, did the employer or insurer have a reasonable basis to believe that medical expenses and compensation benefits were not due the employee. Stated another way, *did the employer or his insurer have sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant.*
>
> (Emphasis added).
>
> An award of penalties and attorney fees depends on the facts known to the employer at the time of its action. Workers' compensation law provides that an employer may reasonably controvert a disputed claim for medical benefits. La.R.S. 23:1201(F)(2). An "employer must rely on competent medical advice *when* the decision to deny medical treatment is made." *Harrington v. Coastal Constr. & Eng'g,* 96-681, p. 3 (La.App. 3 Cir. 12/11/96); 685 So.2d 457, 459, *writ denied,* 97-0109 (La.3/7/97); 689 So.2d 1375. Further, while we agree with *Harrington,* we note that lay evidence is equally compelling in a determination of the need for medical treatment.

*Baullion*, 801 So.2d at 576-77 (emphasis in original). "To avoid penalties and attorney[']s fees for the nonpayment of benefits, the employer or insurer is under a continuing duty to investigate, to assemble, and to assess factual information before denying benefits." *George v. Guillory*, 00-591, p. 13 (La.App. 3 Cir. 11/2/00), 776 So.2d 1200, 1209, *overruled on other grounds*, *Smith v. Quarles Co.*, 04-179 (La. 10/29/14), 885 So.2d 562.

Our supreme court has explained in *Church Mutual Insurance Co. v. Dardar*, 13-2351, p. 18-20 (La. 5/7/14), 145 So.3d 271, 284 that:

> "Louisiana R.S. 23:1203 and 23:1203.1 are . . . . are laws on the same subject matter which must and can be interpreted in reference to each other. . . .
>
> . . . .
>
> With the express intent of delivering health care services to injured employees "in an efficient and timely manner," La. R.S.

23:1203.1 adopts evidence-based medicine as the guidepost for assessing whether the medical care required to be provided under La. R.S. 23:1203 is necessary. To that end, La. R.S. 23:1203.1 requires the promulgation of a medical treatment schedule, which consists of a list of preauthorized procedures, administratively developed and approved according to criteria set forth by the statute. These preauthorized procedures provide a benefit and advantage to injured workers and their treatment providers who are relieved of the burden of establishing the medical necessity of the preauthorized procedures and, at the same time, impose a clear-cut obligation on employers. By their terms, La. R.S. 23:1203.1 and the medical treatment schedule do not exclude any particular care. Instead, these provisions represent and reflect a rational policy choice by the legislature to confer authority on the Director of the OWC, with the assistance of the medical advisory council and the medical director, to determine in advance the medical necessity for certain medical care, in particular circumstances, in order to avoid case-by-case disputes and variations and to streamline the process.

In short, La.R.S. 23:1203.1 and the medical treatment guidelines "[do] not alter" a claimant's rights to necessary medical treatment under La.R.S. 23:1203(A), but rather they "create rebuttable presumptions as to the necessary treatment required by La.R.S. 23:1203(A)." *Id.* at 284-85.

Our review of the record reveals that at the time of denial, the School Board did not have sufficient factual and medical information to justify denial of the requested medical treatment. On April 30, 2014, Claimant reported to Dr. Gunderson that lying down on her left side decreased pain. On May 7, 2014 and May 21, 2014, Claimant reported to Dr. Gunderson that she had difficulty sleeping. On June 16, 2014, following Dr. Gunderson's referral, Claimant reported to Jay Stelly, D.P.T., that she had difficulty "rolling in bed." On July 2, 2014, Claimant again reported to Dr. Gunderson that she was having difficulty sleeping. Additionally, she reported that lying down increased her pain. Finally, on August 20, 2014, before Dr. Gunderson prescribed the adjustable mattress, Claimant reported that she had difficulty sleeping, which was improved by sleeping in a recliner.

While the School Board asserts, correctly, that the Medical Treatment Guidelines referenced indicate that, as a general rule, items such as mattresses are not necessary, the School Board referred to no "factual and medical information to reasonably counter" the medical evidence showing the necessity of such a treatment for *this particular claimant*, who repeatedly expressed the difficulty she had lying down and sleeping. We find that Claimant submitted sufficient evidence to establish that an adjustable mattress was presumably the necessary treatment for this Claimant. Thus, we conclude it was incumbent on the School Board to reasonably controvert the claim and rebut the presumption. However, there was no medical information at all contained within the record to reasonably controvert the claim for treatment by Dr. Gunderson. Moreover, the employer failed to "satisfy[] its continuing obligation to investigate, assemble, and assess factual information prior to it denying benefits[]" such that it could avoid the imposition of penalties and attorney fees. *Lafayette Steel Erector, Inc. v. Constance*, 13-1367, pp. 13-14 (La.App. 3 Cir. 4/16/14), 137 So.3d 1251, 1262 (quoting *Odom v. Kinder Nursing Home*, 06–1442, p. 24 (La.App. 3 Cir. 4/25/07), 956 So.2d 128, 141).

Finally, while a panel of this court concluded that "[a]n employer is entitled to rely upon the decision of the medical director that any treatment proposed is beyond the scope of the [Medical Treatment Guidelines]." *Vital v. Landmark of Lake Charles*, 13-842, pp. 4-5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1017, 1020, we disagree. We find such an interpretation to be a departure from the long-standing jurisprudence requiring that an "employer must rely on competent medical advice *when* the decision to deny medical treatment is made." *Baullion*, 801 So.2d at 576-77.; *E.g. Vital v. Landmark of Lake Charles*, 13-842 (La.App. 3 Cir. 2/12/14), 153 So.3d 1017 (Cooks, Judge, concurring); *Harrington v. Coastal Constr. & Eng'g*, 96-681, p. 3 (La.App. 3 Cir. 12/11/96); 685 So.2d 457, 459, *writ denied*, 97-0109

6

(La. 3/7/97); 689 So.2d 1375; *Benandi v. Louisiana Pac. Corp.*, 00-21 (La.App. 3 Cir. 5/3/00), 760 So.2d 544, 547, *writ denied*, 00-1560 (La. 9/15/00), 768 So.2d 1279. Consequently, we decline to adopt such a drastic departure from well-established jurisprudence.

Because we find that the School Board did not have sufficient medical information to reasonably controvert Claimant's request for the adjustable bed and failed to dispose of its continuing duty to investigate the claim before denying it, we find that the WCJ did not err in awarding penalties and attorney fees to Claimant.

## ASSIGNMENT OF ERROR NUMBER TWO

In its second assignment of error, the School Board asserts the trial court erred in taxing Dr. Gunderson's expert witness fee to it. However, it failed to brief this assignment at all. Thus, we treat this assignment as abandoned.

As this court explained in *Charles v. Landry*, 09-1161, p. 5 (La.App. 3 Cir. 3/10/10), 32 So.3d 1164, 1167-68(citations omitted):

> Uniform Rules—Courts of Appeal, Rule 2–12.4 further provides that "[a]ll specifications or assignments of error must be briefed" and that the "court may consider as abandoned any specification or assignment of error which has not been briefed." Based upon that rule, this court has time and again stated that "[w]here a party advances no argument whatsoever for one of [its] alleged specific assignments of error, the court may consider that assignment of error abandoned."

In accordance with this long-standing interpretation of Rule 2–12.4 of the Uniform Rules—Courts of Appeal, we find the School Board's complete failure to present any argument pertaining to the trial court's alleged error in taxing the costs of the expert witness to it to be an abandonment of that error.

## ANSWER TO APPEAL

It is well-established that a workers' compensation claimant that is successful in defending the appeal is entitled to an award of additional attorney

fees. *E.g. Green v. Nat'l Oilwell Varco*, 10-1041 (La.App. 3 Cir. 4/27/11), 63 So.3d 354; *Nash v. Aecom Tech. Corp.*, 07-990 (La.App. 3 Cir. 2/6/08), 976 So.2d 263. Claimant answered the School Board's appeal, requested an award of additional attorney fees for the costs of defending the appeal and for the School Board to be cast with the costs of the appeal, and was successful in so defending. Thus, we award an additional $3,500.00 in attorney fees to Claimant.

Additionally, when a workers' compensation claimant successfully defends a judgment in his favor, the defendant may be cast with all costs associated with the appeal. *Green*, 63 So.3d 354. Thus, all costs of this appeal are assessed to Defendant.

**DECREE**

For the foregoing reasons, the judgment of the trial court is affirmed, with costs assessed to Defendant, Calcasieu Parish School Board.

**AFFIRMED.**