# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-1285

JACQUENETTE GUIDRY

VERSUS

AMERICAN LEGION HOSPITAL

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 4
PARISH OF ACADIA, NO. 14-03815
SHARON MORROW, WORKERS' COMPENSATION JUDGE

**********

## PHYLLIS M. KEATY
## JUDGE

**********

Court composed of John D. Saunders, James T. Genovese, and Phyllis M. Keaty, Judges.

**AFFIRMED.**

**H. Douglas Hunter**
**Misti Landry Bryant**
**Guglielmo, Lopez, Tuttle, Hunter & Jarrell, L.L.P.**
**Post Office Drawer 1329**
**Opelousas, Louisiana  70571-1329**
**(337) 948-8201**
**Counsel for Defendant/Appellant:**
**American Legion Hospital**

**Thomas A. Budetti**
**Attorney at Law**
**556 Jefferson Street, Suite 200A**
**Lafayette, Louisiana  70501**
**(337) 269-9499**
**Counsel for Plaintiff/Appellee:**
**Jacquenette Guidry**

**KEATY, Judge.**

Employer suspensively appeals from a judgment rendered by the workers' compensation judge (WCJ) reversing a decision of the Louisiana Medical Director to deny the claimant's request for a lumbar surgical procedure and, thereby, approving the procedure. We affirm.

## FACTS AND PROCEDURAL HISTORY

Claimant, Jacquenette Guidry, a registered nurse, injured her back on June 12, 2012, in the course and scope of her employment with American Legion Hospital while transferring a patient into a bed. According to the medical records attached to her Form 1008 Disputed Claim for Compensation, she developed low back pain within fifteen to twenty minutes of the transfer and was sent to the emergency room by her employer, where she was treated, released, and advised to seek follow-up care with her primary care physician. After seeing several physicians and obtaining no relief from physical therapy and a lumbar epidural steroid injection, claimant eventually sought treatment from Dr. Mark McDonnell, an orthopedic surgeon. On May 14, 2014, Dr. McDonnell submitted a Form 1009 Disputed Claim for Medical Treatment, together with thirty-eight pages of supporting medical documentation, seeking approval from the Medical Director of the Office of Workers' Compensation (the Medical Director) of a posterior lumbar decompression and fusion at L4-S1 with post-operative bracing that had been denied by Novare, the workers' compensation carrier of Guidry's employer. The Medical Director denied the requested procedure in a Medical Guidelines Dispute Decision (MGD) dated May 27, 2014. The MGD explained the denial as follows:

- For decompression indications as required in the MTG have not been met: records do not document radiculitis on exam; the imaging does not correlate for neural compression.

- For spinal fusion a specific indication for spinal fusion is not demonstrated at L4/5[.]

- All preoperative surgical indications as required in the MTG for fusion have not been met; a specific diagnosis or pain generator is not identified by exam, imaging, or diagnostic injection; imaging does not demonstrate spinal instability.

- Records specifically state that the examination is neurologically intact; xray report dated 10.31.2013 notes disc space preservation except L5/S1, no instability on flexion / extension. Lumbar MRI report notes at L4/5 right foraminal disc protrusion with annular fissure and foramina) stenosis; at L5/S1 disc narrowing, moderate bilateral foraminal stenosis. Psychosocial evaluation and clearance is noted.

The stated rationale for the denial was that "[t]he documentation submitted does not support the approval of the requested services in review for compliance with the Medical Treatment Schedule." The MGD further specified that the reason for the denial was that "[t]he clinical findings, the natural history of the disease, the clinical course, and diagnostic tests do not correlate to support the requested service[.]" According to the MGD, the Medical Director made its decision based upon the criteria found in Section 2015 (General Guidelines Principles) and Section 2023 (Therapeutic Procedures-Operative) of Chapter 20 of the Guidelines, which pertain to the spine.

Guidry appealed the Medical Director's denial in a Form 1008 filed on June 3, 2014, with an attached Addendum in which her attorney outlined the reasons why the denial was contrary to the Guidelines and should be reversed per La.R.S. 23:1203.1. A copy of the Medical Director's file was also attached to the 1008. Following an August 1, 2014 contradictory hearing, the WCJ ruled in open court that she found clear and convincing evidence that the Medical Director erred in that he "did not consider the guideline under which the request was made." The

2

WCJ stated that it agreed with the reasons set forth in the addendum to Guidry's 1008, which it adopted as its reasons for ruling. Written judgment was signed on September 8, 2014, overturning the May 27, 2014 decision of the Medical Director and approving the requested lumbar surgical procedure "in accordance with Louisiana law, the Louisiana Workers' Compensation Act (the Act), and the Louisiana Workers' Compensation Medical Treatment Guidelines (the Guidelines).[1]" The employer suspensively appealed and is now before this court arguing in its sole assignment of error that the WCJ erred in finding that Guidry "demonstrated by clear and convincing evidence that the May 27, 2014 decision of the Medical Director denying a lumbar surgical procedure should be overturned."

## DISCUSSION

Louisiana Revised Statutes 23:1203.1 was enacted by the legislature in 2009 to provide for the establishment of a medical treatment schedule, and such a schedule was promulgated by the Louisiana Workforce Commission, Office of Workers' Compensation Administration in June 2011. As a result, "medical care, services, and treatment due, pursuant to R.S. 23:1203, et seq., by the employer to the employee shall mean care, services, and treatment in accordance with the medical treatment schedule." La.R.S. 23:1203.1(I). Section 1203.1 establishes a procedure whereby an injured employee's medical provider can request authorization for medical services from a payor, usually the employer or its insurer, who must act on that request within five days. La.R.S. 23:1203.1(J)(1). Thereafter, any aggrieved party has fifteen days within which to file an appeal with the Medical Director who must render a decision within thirty days. *Id.* "After the issuance of the decision by the medical director . . . , any party who disagrees with the decision, may then appeal by filing a 'Disputed Claim for Compensation.'" La.R.S. 23:1203.1(K). A decision of the Medical Director "may be overturned when it is shown, by clear and convincing evidence, the decision . . . was not in accordance with the provisions of this Section." *Id.*; *See also Usie v. Lafayette Parish Sch. Sys.*, 13-294 (La.App. 3 Cir. 10/9/13), 123 So.3d 885.

---

[1] *See* La. Admin Code. tit. 40, pt. I, § 2717.

3

*Matthews v. La. Home Builder's Ass'n Self Insurer's Fund*, 13-1260, pp. 4-5 (La.App. 3 Cir. 3/12/14), 133 So.3d 1280, 1283-84.

In *Mouton v. Lafayette Parish Sheriff's Office*, 13-1411 (La.App. 3 Cir. 5/7/14), __ So.3d __, *on reh'g*, (La.App. 3 Cir. 10/15/14), __ So.3d __, this court clarified that the standard of appellate review to be employed when reviewing a WCJ's review of a decision of the Medical Director is manifest error. That holding was based upon our finding that "the WCJ's review of whether there is clear and convincing evidence that the Medical Director's determination is in contravention of the medical treatment guidelines is necessarily fact-intensive." *Id.* at __. Accordingly, "we will not overturn the findings of the WCJ unless we find there is no reasonable basis to support the decision." *Id.* at __.

In the instant matter, the employer contends that the WCJ should have affirmed the decision of the Medical Director because there is no evidence that he failed to follow the Guidelines. With regard to Guidry's assertion that the Medical Director erred because he reviewed the requested surgical procedure under the wrong section of the Guidelines, the employer submits in its appellate brief that Guidry "cannot dictate under which section approval or denial will be based." The employer further submits that even though Dr. McDonnell has only recommended a single surgery, all aspects of the proposed surgery had to be appropriate under the Guidelines. More specifically, the employer argues that both the decompression and the fusion had to be independently warranted under the Guidelines for the Medical Director to approve the requested surgical procedure. Because the documentation submitted by Dr. McDonnell did not show that Guidry had the surgical indications to make decompression necessary under Section 2023(F)(3)(c), i.e., "[p]rimary radicular symptoms, radiculopathy and radiculitis on exam,

correlating imaging study, and failure of non-surgical care," Guidry did not prove that requested procedure was medically necessary. Additionally, the employer contends that because Guidry sought approval for a two-level fusion, it had to be medically necessary at both levels. Because the documentation submitted by Dr. McDonnell did not show that Guidry had all of the necessary pre-operative surgical indications to make a fusion necessary under Section 2023(F)(4)(e), including spinal instability demonstrated by X-ray, MRI, or CT/Discography, Guidry did not prove that requested procedure was medically necessary. As a result, the employer contends that the decision of the WCJ reversing the Medical Director's decision should be reversed by this court because Guidry did not meet her burden of proving by clear and convincing evidence that the Medical Director's decision was not in accordance with the Guidelines.

In support of her argument that the judgment of the WCJ should be upheld, Guidry contends that the medical evidence submitted by Dr. McDonnell met the Guideline's requirements for the proposed two-level lumbar fusion. She points out that Section 2023 allows for thirteen different types of lumbar spinal surgeries, each of which has a different set of criteria that must be met in addition to the general criteria found in Subsections A, B, and C of Section 2023. Guidry explains that her physician sought approval for surgery under Section 2023(F)(4)(d)(iii), which pertains to "primary mechanical back pain/functional spinal unit failure." She submits that the medical records provided by Dr. McDonnell documented that she suffered from two or more of the pain generators required for the surgery to be medically necessary under Section 2023(F)(4)(d)(iii). [2] More particularly,

---

[2] Louisiana Administrative Code Title 40, Part I, § 2023(F)(4)(d)(iii) requires that there be:

Dr. McDonnell noted in his May 6, 2014 report that Guidry had "painful motion segment, as in annular tears" and facet syndrome at L4-5 and disc resorption and facet syndrome at L5-1. Dr. McDonnell further noted in his May 6, 2014 report that Guidry met all of the pre-operative surgical indications listed in Section 2023(F)(4)(e),[3] including getting psychological clearance for the surgery and quitting smoking. In sum, Guidry submits that by failing to apply the Guidelines applicable to the specific surgery that Dr. McDonnell sought approval for, i.e., a posterior lumbar decompression and fusion at L4-S1 with post-operative bracing, to treat the specific medical condition that he had diagnosed her with, i.e., failed back syndrome, the medical director forced a burden upon her which is medically impossible to meet. In other words, Guidry submits that under the **applicable** Guidelines, she need not show radiculitis or spinal instability. Finally, Guidry submits that she need not show that she meets the requirements for an independent decompression surgery since a decompression is part and parcel of the requested

---

. . . multiple pain generators objectively involving two or more of the following:

(a). internal disc disruption (poor success rate if more than one disc involved);
(b). painful motion segment, as in annular tears;
(c). disc resorption;
(d). facet syndrome; and/or
(e). ligamentous tear.

[3] Louisiana Administrative Code Title 40, Part I, § 2023(F)(4)(e) requires that the patient meet all of the following pre-operative surgical indications:

i. all pain generators are adequately defined and treated; and
ii. all physical medicine and manual therapy interventions are completed; and
iii. x-ray, MRI, or CT/Discography demonstrate disc pathology or spinal instability; and
iv. spine pathology is limited to two levels; and
v. psychosocial evaluation with confounding issues addressed;
vi. for any potential fusion surgery, it is recommended that the injured worker refrain from smoking for at least six weeks prior to surgery and during the period of fusion healing.

6

surgery, i.e., when Dr. McDonnell fuses her spine at L4-5 and L5-S1, he will also decompress the pathology to resolve the medical issues associated with those discs.

After a thorough review of the record before us, we find no manifest error in the WCJ's conclusion that the Medical Director erred in denying Guidry's request for a posterior lumbar decompression and fusion at L4-S1 with post-operative bracing. Simply following any of the Guidelines is not enough. The Medical Director must follow the particular Guideline applicable to the specific treatment recommended by an injured worker's physician. Here, Dr. McDonnell carefully documented Guidry's medical condition as well as how that condition met the Guidelines requirements for surgical intervention to address and remedy that condition. As such, we find no manifest error in the WCJ's conclusion that Guidry met her burden of proving by clear and convincing evidence that the Medical Director's decision was not in accordance with the Guidelines.

### DECREE

For the foregoing reasons, the judgment of the workers' compensation judge reversing a decision of the Louisiana Medical Director to deny Jacquenette Guidry's request for a lumbar surgical procedure and, thereby, approving the procedure is affirmed. All costs of this appeal are assessed against the employer, American Legion Hospital.

**AFFIRMED.**

7