# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 16-342


**CLIFFORD JOSEPH LEDET**

**VERSUS**

**CETCO OILFIELD SERVICES COMPANY, LLC**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 9
PARISH OF IBERIA, NO. 14-04750
ELIZABETH LANIER, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

## D. KENT SAVOIE
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of James T. Genovese, Phyllis M. Keaty, and D. Kent Savoie, Judges.


**AFFIRMED.**

**Mark T. Garber**
**Attorney at Law**
**2000 W. Congress Street**
**Lafayette, LA 70506**
**(337) 234-5500**
**INTERVENOR**

**Scott T. Winstead**
**Katherine L. Swartout**
**Thompson Coe**
**650 Poydras St., Suite 2750**
**New Orleans, LA 70130**
**(504) 526-4350**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **CETCO Oilfield Services Company**

**Kenny M. Habetz, Jr.**
**Brandt & Sherman, L.L.P.**
**111 Mercury Street**
**Lafayette, LA 70503**
**(337) 237-7171**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Clifford Joseph Ledet**

**SAVOIE, Judge.**

Plaintiff Clifford Joseph Ledet (Ledet) appeals a March 2, 2016 judgment of the workers' compensation court finding that: 1) Ledet's rheumatoid arthritis was not causally related to the work accident of October 17, 2012, and, thus, was not compensable under the Workers' Compensation Act (WCA), and 2) Defendant CETCO Oilfield Services, L.L.C. (CETCO) was not responsible for the payment of medical treatment related to the rheumatoid arthritis, including the prescription Leucovorin.[1] For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On October 17, 2012, while Ledet was employed by CETCO, he tripped and fell moving handrails, injuring his lower back and left elbow. Immediately after the accident, Ledet presented to the Occupational Medicine Clinic of Acadiana (OMCA) walk-in clinic where he was evaluated by Dr. Ross Gardner. X-rays were taken which showed traction spurs and arthritic changes. Ledet related to Dr. Gardner that he had been taking Prednisone, a steroid, for a basketball injury, which occurred the previous month, but that he was out of the medication. Ledet was diagnosed with contusions to the lumbar spine and left elbow. He was released to work full time with no restrictions where tolerable. Later the same day, Ledet presented to the Iberia Medical Center emergency room. He did not mention his previous knee injury or any medications he was taking. Ledet was treated with Toradol to ease his pain and Norflex as a muscle relaxer. He was also prescribed Anaprox for inflammation and Flexeril for muscle spasms. X-Rays were also performed at Iberia Medical Center. These x-rays indicated degenerative joint disease and compression fractures, the age of which was unknown.

---

[1] The workers' compensation judge also found that Ledet's former attorney was not entitled to receive additional attorney fees, however, that issue was not appealed.

On October 23, 2012, Ledet had a follow-up visit with Dr. Gardner at OMCA. Ledet reported no pain except for some stiffness when arising in the morning. However, a skin rash was noted by Dr. Gardner as possible psoriatic arthritic disease. Ledet was released to full work duty with no restrictions.

Ledet returned to OMCA on November 7, 2012, seeing Dr. Tony Alleman. He prescribed Flexeril and Lodine and ordered an MRI for Ledet. Ledet did not follow-up with Dr. Alleman; instead he saw Dr. John Sledge at the Lafayette Bone and Joint Clinic. He first presented to Dr. Sledge on December 5, 2012. Ledet did not inform Dr. Sledge of his previous basketball injury. He reported aching and numbness in his knee and walked with a limp. He also had back pain. Dr. Sledge prescribed Prednisone and suggested physical therapy. Ledet continued treatment with Dr. Sledge periodically from December 2012 through trial.

On May 29, 2013, Ledet sought a second medical opinion from Dr. Douglas Bernard. Dr. Bernard suggested Ledet see a rheumatologist. Dr. Sledge was in agreement. On October 20, 2013, Ledet was involved in an automobile accident, resulting in neck and back pain. He was treated by a chiropractor. Dr. Sledge referred Ledet to a pain management doctor, Dr. Steven Staires. Dr. Staires first evaluated Ledet on February 18, 2014. He noted that Ledet had physical evidence of degenerative joint disease in his knees and polyarthropathy (a type of arthritis) in his hands. Ledet was instructed to find a primary care physician in Houston, Texas, where he lives, for further treatment. It is unknown whether Ledet followed this advice.

On April 15, 2014, Ledet was seen by Dr. Joseph Nesheiwat, a rheumatologist. Dr. Nesheiwat attributed Ledet's rheumatoid arthritis to his workplace injury. Ledet received steroid shots in his knee which were paid by

CETCO until the issue of whether the rheumatoid arthritis was attributable to his workplace accident was resolved.

Ledet filed a claim with the workers' compensation court on July 10, 2014, for CETCO's failure to approve the medication Leucovorin, which was recommended by Dr. Nesheiwat to treat Ledet's rheumatoid arthritis. CETCO answered, alleging the expenses sought were not related to the workplace accident.

Prior to commencement of trial, the parties agreed to the following stipulations:

1. Clifford Ledet was employed with Cetco on 10/17/12.

2. Clifford Ledet was involved in an accident in the course and scope of his employment with Cetco on 10/17/12.

3. As a result of the accident, Ledet sustained bodily injuries to his back and left elbow.

4. Cetco would pay Ledet past mileage expenses through the date of trial for medical treatment and prescriptions upon receipt of documentation evidencing the date of medical treatment and prescriptions, subject to a credit for mileage already paid by Cetco. Amount to be determined between the parties.

5. Ledet's [Average Weekly Wage] (AWW) was $903.31. Wage benefits of $602.23 per week have been paid since injury.

6. There was no dispute as to timing or amount of wage benefit payments.

7. All medical benefits not related to rheumatoid arthritis have been paid.

8. The only issue of non-payment for medical treatment stems from the compensability of rheumatoid arthritis.

The workers' compensation judge (WCJ) ruled in favor of CETCO and against Ledet, finding that Ledet's rheumatoid arthritis was not causally related to the workplace accident and that he was not entitled to reimbursement for the prescription, Leucoverin. Ledet now appeals.

1. The WCJ committed manifest error in failing to apply the presumption of causation.

2. The WCJ committed manifest error in holding Ledet's rheumatoid arthritis was not causally related to the on the job accident and injury on October 17, 2012, as the WCJ's findings and conclusions were not reasonably supported by the record.

3. The WCJ committed manifest error in admitting evidence and testimony, specifically Defendant Exhibit 14, regarding the records of Dautrive Hospital for the date of service of December 16, 2011, wherein Ledet complained of abdominal pain, vomiting and nausea.

4. The WCJ committed manifest error in admitting evidence and testimony, specifically Defendant Exhibit 16, regarding the subsequent automobile accident of October 20, 2013.

5. The WCJ committed manifest error in failing to award penalties and attorney's fees.

## DISCUSSION

*Assignments of Error Numbers One and Two*

The WCJ found that Ledet did not meet his burden of proof by a preponderance of the evidence to establish that the development of his rheumatoid arthritis was a consequence of his October 17, 2012 workplace accident. The WCJ further determined that Ledet did not prove a causal connection between his rheumatoid arthritis and the workplace accident. Ledet argues that the WCJ failed to apply the presumption of causation. This court has previously stated:

> "An employee in a worker[s'] compensation action has the burden of establishing a causal link between the work-related accident and the subsequent disabling condition." An employee's disability is presumed to have resulted from the accident if before the accident, the injured employee was in good health, but commencing with the accident, symptoms of the disabling condition appeared and continuously manifested themselves afterwards. However, the presumption requires either that there is sufficient medical evidence to show there to be a reasonable possibility of causal connection between

4

the accident and disabling condition, or that the nature of the accident, when combined with the other facts of the case, raises a natural inference through human experience of such a causal connection.

Whether the presumption is applicable is a finding of fact subject to the manifest error-clearly wrong standard of review.

*Brown v. Town of Ferriday*, 11-570, pp. 2-3 (La.App. 3 Cir. 11/2/11), 76 So.3d 155, 157-158 (citations omitted) (alteration in original).

Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. *Smith v. Louisiana Dep't of Corrections,* 93-1305, p. 4 (La.2/28/94), 633 So.2d 129, 132; *Freeman v. Poulan/Weed Eater,* 93-1530, pp. 4-5 (La.1/14/94), 630 So.2d 733, 737-38. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Freeman*, 93–1530 at p.5, 630 So.2d at 737–38; *Stobart v. State*, 617 So.2d 880, 882 (La.1993); *Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. *Stobart*, 617 So.2d at 882. Thus, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1112 (La.1990).

*Banks v. Indus. Roofing & Sheet Metal Works, Inc.*, 96–2840, pp. 7-8 (La. 7/1/97), 696 So.2d 551, 556 (La. 7/1/97) (alteration in original).

The record reflects that Ledet was exhibiting signs of rheumatoid arthritis prior to the workplace accident. The spirometry reports in Ledet's pre-employment physical examinations show a decline in respiratory function. On April 9, 2010, at the age of forty-five, Ledet's lung age was fifty-six, while on October 14, 2011, they were found to have declined to eighty years of age. In the x-rays taken on the day of the subject accident, degenerative joint disease and arthritic changes are visible. Further, the injury that Ledet sustained during the

basketball game a month before the workplace accident resulted in inflammation so severe that he walked with a limp for months. Based on the evidence in the record, it was reasonable for the WCJ to have found that Ledet was not in good health prior to accident.

However, even if the WCJ found that Ledet was in good health prior to the accident, the law still requires that "there is sufficient medical evidence to show there to be a reasonable possibility of causal connection between the accident and disabling condition, or that the nature of the accident, when combined with the other facts of the case, raises a natural inference through human experience of such a causal connection." *Brown* at 158.

Between 2010 and 2011, Ledet's lung age significantly increased. In December 2011, Ledet was admitted into hospital for a gastrointestinal tract infection. As discussed above, Ledet walked with a limp due to swelling of his knee from a previous basketball injury which occurred in September 2012, before his October 2012 workplace accident.

In a May 29, 2013 report, Dr. Bernard stated that some of Ledet's problems could stem from rheumatoid disease. This report was compiled seven months after the accident. Ledet testified that he had never heard of rheumatoid arthritis before this time. Dr. Sledge's first mention of rheumatoid arthritis was October 16, 2013, wherein he agreed with Dr. Bernard that Ledet should be seen by a rheumatologist. This was one year after the accident. Dr. Nesheiwat examined Ledet in April 2014, and diagnosed him with seropositive rheumatoid arthritis.

Dr. Nesheiwat opined that it was "medically reasonable that [Ledet's] rheumatoid arthritis ha[d] likely occurred as a result of the trauma sustained during the work-related injury in 2012." CETCO did not introduce expert testimony to

completely disprove this claim. However, Dr. Bernard disagreed with the conclusion that Ledet's rheumatoid arthritis was caused by his workplace accident. He questioned the science behind Dr. Nesheiwat's opinion finding that it was based on a "non-scientific retrospective review." Further, the American Medical Association Guide for Disease and Injury Causation states that "there is no high quality evidence in the literature to substantiate a relationship between trauma and [rheumatoid arthritis]." The WCJ clearly found this evidence to be persuasive in finding no causal link between Ledet's injury and the workplace accident.

We find the WCJ was not manifestly erroneous in failing to apply a presumption of causation in this case. Further, based on the record before us, the WCJ had a reasonable basis to find no causal link between the workplace injury and Ledet's rheumatoid arthritis. These assignments lack merit.

*Assignment of Error Number Three*

Ledet next complains that the WCJ committed manifest error in admitting evidence and testimony, specifically Defendant Exhibit 14, regarding the records of Dauterive Hospital for the date of service of December 16, 2011, wherein Ledet complained of abdominal pain, vomiting, and nausea. This issue, while listed as an assignment of error, was not briefed. Therefore, we treat this assignment as abandoned.

As we discussed in *Ardoin v. Calcasieu Parish School Board*, 15-814, p. 7 (La.App. 3 Cir. 2/3/16), 184 So.3d 896, 901 (quoting *Charles v. Landry,* 09–1161, p. 5 (La.App. 3 Cir. 3/10/10), 32 So.3d 1164, 1167–68 (citations omitted)), *writ denied*, 16-641(La. 5/27/16), 192 So.3d 738:

> Uniform Rules—Courts of Appeal, Rule 2–12.4 further provides that "[a]ll specifications or assignments of error must be briefed" and that the "court may consider as abandoned any specification or assignment

of error which has not been briefed." Based upon that rule, this court has time and again stated that "[w]here a party advances no argument whatsoever for one of [its] alleged specific assignments of error, the court may consider that assignment of error abandoned."

As such, we find any and all argument regarding Defendant Exhibit 14 to be abandoned.

### Assignment of Error Number Four

Ledet next complains that the WCJ committed manifest error in admitting Defendant Exhibit 16, regarding the subsequent automobile accident of October 20, 2013. Ledet asserts that this evidence is irrelevant to the determination of the causation of his rheumatoid arthritis.

"Evidentiary standards in workers' compensation cases are relaxed by comparison to those in ordinary civil actions." *Romero v. Flowers Baking Co. of Lafayette, LLC*, 12-1466, p. 4 (La.App. 3 Cir. 5/1/13), 114 So.3d 522, 525, *writ denied*, 13-1755 (La. 11/1/13), 125 So.3d 1094.

> La.R.S. 23:1317(A) provides, in pertinent part, that "[t]he workers' compensation judge shall not be bound by technical rules of evidence . . . but all findings of fact must be based upon competent evidence[.]" Our supreme court has explained:
>
>> The Legislature in fashioning a relaxed evidentiary standard for workers' compensation proceedings envisioned the broad admission of evidence that might fall outside of the technical rules of evidence . . . . However, to ensure the reliability of factual findings, the Legislature has mandated that the hearing officer's findings be based on "competent evidence."

*Loucious v. Crest Indus.*, 15-690, pp. 6-7 (La.App. 3 Cir. 12/16/15), 181 So.3d 956, 960 (quoting *Chaisson v. Cajun Bag & Supply Co.,* 97–1225, p. 13 (La. 3/4/98), 708 So.2d 375, 383).

With these relaxed rules in mind, we find that the WCJ did not commit manifest error when she allowed Defendant Exhibit 16, regarding the subsequent

automobile accident of October 20, 2013, into the record. The accident occurred during the time Ledet was seeing doctors about his workplace accident and rheumatoid arthritis. There were questions about what he told his doctors about the automobile accident and how that would affect their opinions. It is reasonable to assume that this evidence would be relevant to the issues before the WCJ. This assignment has no merit.

*Assignment of Error Number Five*

Based on our affirmation of the WCJ's judgment, we find that she was correct in failing to award attorney's fees and penalties in this matter.

## DECREE

For the reasons discussed above, the judgment of the WCJ in favor of CETCO and against Clifford Joseph Ledet is affirmed. All costs associated with these proceedings are assessed to Clifford Joseph Ledet.

**AFFIRMED.**