# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 19-847

CITY OF ABBEVILLE

VERSUS

CLIFFORD SUIRE

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 4
PARISH OF VERMILION, NO. 19-03907
ANTHONY PALERMO, WORKERS' COMPENSATION JUDGE

**********

## PHYLLIS M. KEATY
## JUDGE

**********

Court composed of Sylvia R. Cooks, Phyllis M. Keaty, and Van H. Kyzar, Judges.

**AFFIRMED.**

Christopher R. Philipp
Law Office of Christopher R. Philipp
Post Office Box 2369
Lafayette, Louisiana 70502
(337) 235-9478
Counsel for Plaintiff/Appellant:
    City of Abbeville

Dustin B. Gibson
Dustin B. Gibson Law, L.L.C.
1538 West Pinhook Road, Suite 103
Lafayette, Louisiana 70503
(337) 501-2418
Counsel for Defendant/Appellee:
    Clifford Suire

**KEATY, Judge.**

Employer appeals a judgment rendered by the workers' compensation judge (WCJ) affirming a decision of the Medical Director to approve a procedure requested by Claimant's treating neurosurgeon. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

The facts in this matter are not in dispute; however, there is opposing medical evidence regarding whether the requested surgery is medically necessary. Claimant, Clifford Suire, was injured in the course and scope of his employment with the City of Abbeville on October 30, 2012, while attempting to lift a one-hundred-pound root cutter into his work truck. Dr. Jason Cormier, a neurosurgeon, performed an anterior cervical discectomy at levels C5-6 and C6-7 of Suire's neck in April of 2013. Suire discontinued treatment with Dr. Cormier in the Fall of 2018 and began treatment with neurosurgeon, Dr. Ilyas Munshi. Based upon his examination of Suire and Suire's continued complaints of neck and right arm pain, Dr. Munshi ordered scans of Suire's cervical spine. After reviewing the updated MRI, Dr. Munshi diagnosed Suire with cervical radiculopathy, herniation, and right carpal tunnel syndrome, and he recommended that Suire undergo foraminotomies on the right C3-4, C4-5, C5-6, and C6-7 regions, along with a right carpal tunnel release. Dr. Munshi filed a Form 1010 Request of Authorization (1010) to perform the procedure on Suire with the City's workers' compensation insurer. Upon receiving denial of his request, Dr. Munshi appealed to the Medical Director for the Office of Workers' Compensation Administration.

On June 5, 2019, Dr. Jason Picard issued a Medical Guidelines Dispute Decision (MGDD) approving the procedure proposed by Dr. Munshi. Thereafter, the City filed a Form 1008 Disputed Claim for Compensation (1008) appealing the

MGDD to the Office of Workers' Compensation. Suire answered the City's 1008, alleging that the City's refusal to authorize, schedule, or pay for the approved medical treatment was arbitrary and capricious and that the City had not reasonably controverted his request for surgery. As a result of the City's actions, Suire sought penalties and attorney fees. In addition, Suire filed his own 1008 in which he appealed the City's failure to authorize and pay for approved medical treatment recommended by Dr. Munshi. Upon a motion of the City, the WCJ consolidated the two 1008s.

The matter proceeded by contradictory hearing on August 30, 2019, following which the WCJ took the matter under advisement. In an oral ruling given on September 9, 2019, the WCJ stated that he was denying the City's appeal of the Medical Director's Decision. Written judgment in conformity with its oral reasons was signed on September 17, 2019. The City timely appealed the judgment and is now before this court asserting that:

> 1. The trial court committed manifest error when it denied Abbeville's appeal of the OWC Medical Director's decision authorizing the posterior C3-C7 foraminotomy with right carpel tunnel release.
>
> 2. The trial court erroneously applied the Medical Treatment Guideline pertaining to cervical spine injury (La. Admin. Code tit. 40, Pt. I, §2001-2011) and carpel tunnel syndrome treatment guidelines (La. Admin. Code tit. 40, Pt. I, §2201-2213).
>
> 3. The trial court erroneously applied the medical treatment guidelines when it affirmed the medical director's decision because Drs. Cormier, Thomas and Ioppollo didn't refer to particular sections of the medical treatment guidelines in their reports and records when all three physicians opined that Suire did not need a second cervical surgery.

## DISCUSSION

> Louisiana Revised Statutes 23:1203.1 was enacted by the legislature in 2009 to provide for the establishment of a medical treatment schedule, and such a schedule was promulgated by the Louisiana Workforce Commission,

2

Office of Workers' Compensation Administration in June 2011.[1]  As a result, "medical care, services, and treatment due, pursuant to R.S. 23:1203 et seq., by the employer to the employee shall mean care, services, and treatment in accordance with the medical treatment schedule."  La.R.S. 23:1203.1(I).  Section 1203.1 establishes a procedure whereby an injured employee's medical provider can request authorization for medical services from a payor, usually the employer or its insurer, who must act on that request within five days.  La.R.S. 23:1203.1(J)(1).  Thereafter, any aggrieved party has fifteen days within which to file an appeal with the Medical Director who must render a decision within thirty days.  *Id.*  "After the issuance of the decision by the medical director ..., any party who disagrees with the decision, may then appeal by filing a 'Disputed Claim for Compensation.' "  La.R.S. 23:1203.1(K).  A decision of the Medical Director "may be overturned when it is shown, by clear and convincing evidence, the decision ... was not in accordance with the provisions of this Section."  *Id.*; *See also Usie v. Lafayette Parish Sch. Sys.,* 13-294 (La.App. 3 Cir. 10/9/13), 123 So.3d 885.

*Matthews v. La. Home Builder's Ass'n Self Insurer's Fund,* 13-1260, pp. 4-5 (La.App. 3 Cir. 3/12/14), 133 So.3d 1280, 1283-84.

In *Mouton v. Lafayette Parish Sheriff's Office,* 13-1411 (La.App. 3 Cir. 5/7/14), 158 So.3d 833, *on reh'g*, (La.App. 3 Cir. 10/15/14), 158 So.3d 833, this court clarified that the standard of appellate review to be employed when reviewing a WCJ's review of a decision of the Medical Director is manifest error.  That holding was based upon our finding that "the WCJ's review of whether there is

---

[1] Enacted by the legislature in 2009, La. R.S. 23:1203.1 is the product of a combined endeavor by employers, insurers, labor, and medical providers to establish meaningful guidelines for the treatment of injured workers.  1 DENIS PAUL JUGE, LOUISIANA WORKERS' COMPENSATION, § 13:6 (2d ed.2013).  Dissatisfied with a process for obtaining needed medical treatment that was cumbersome, uncertain and often fraught with expense, employers and their insurers perceived a need for guidelines that would assure them that the treatment recommended by a medical provider was generally recognized by the medical community as proper and necessary.  *Id.*  In a similar vein, labor and their medical providers were concerned about the unreasonable delays regularly encountered in obtaining approval for treatment when disputes arose as to the necessity for the treatment and with having a procedure for obtaining approval for treatment that might vary from established guidelines.  *Id.*  Thus, La. R.S. 23:1203.1 was enacted with the express intent "that, with the establishment and enforcement of the medical treatment schedule, medical and surgical treatment, hospital care, and other health care provider services shall be delivered in an efficient and timely manner to injured employees." La. R.S. 23:1203.1(L).

*Church Mut. Ins. Co. v. Dardar,* 13-2351, p. 5 (La. 5/7/14), 145 So.3d 271, 275-76 (footnotes omitted).

clear and convincing evidence that the Medical Director's determination is in contravention of the medical treatment guidelines is necessarily fact-intensive." *Id.* at 835. Accordingly, "we will not overturn the findings of the WCJ unless we find there is no reasonable basis to support the decision." *Id.* at 835.

*Guidry v. Am. Legion Hosp.*, 14-1285, pp. 3-4 (La.App. 3 Cir. 4/1/15) 162 So.3d 728, 730.

Title 40, Part I of the Louisiana Administrative Code § 2717(C)(3) defines "Medical Necessity" as follows:

a. The workers' compensation law provides benefits only for services that are medically necessary for the diagnosis or treatment of a claimant's work related illness, injury, symptom or complaint. Medically necessary or medical necessity shall mean health care services that are:

i. clinically appropriate, in terms of type, frequency, extent, site, and duration, and effective for the patient's illness, injury, or disease; and

ii. in accordance with the medical treatment schedule and the provisions of R.S. 23:1203.1.

b. To be medically necessary, a service must be:

i. consistent with the diagnosis and treatment of a condition or complaint; and

ii. in accordance with the Louisiana medical treatment schedule; and

iii. not solely for the convenience of the patient, family, hospital or physician; and

iv. furnished in the most appropriate and least intensive type of medical care setting required by the patient's condition.

### Suire's Medical History

After his October 2012 accident, Suire sought treatment from Dr. Cormier, a neurosurgeon, who performed surgery on levels C5-6 and C6-7 of Suire's neck in 2013. For a period of time after the surgery, Dr. Cormier had Suire wear a bone growth stimulator and attend physical therapy. Dr. Cormier referred Suire to

4

Dr. Daniel Hodges for pain management in November of 2016, at which time his main complaints included neck, upper back, lower back, and bilateral arm pain. Dr. Hodges ordered an electromyogram (EMG) based upon his belief that Suire may have carpal tunnel syndrome. In a note dated February 16, 2017, Dr. Hodges noted that the EMG of Suire's right arm revealed "significant median nerve entrapment neuropathy" and that he would direct Suire to "pursue a carpal tunnel release with Dr. Cormier." After reviewing a recent cervical MRI which revealed "significant juxta segmental changes at C4-5, disc herniation and bilateral foraminal stenosis," Dr. Hodges opined in a September 14, 2017 note that Suire would likely need additional surgeries.

Dr. Cormier referred Suire to Dr. Michael Jennings who gave him three sets of cervical epidural steroid injections (CESIs) between November 2017 and March 2018. According to Dr. Jennings' March 22, 2018 report, Suire stated that the previous injections provided him with "70% relief and duration about 4 weeks."

Due to Suire's continued complaints of cervical pain and weakness in his arms in spite of the conservative treatment he had received since his first surgery, Dr. Cormier ordered a cervical MRI in September of 2017. In a note dated May 10, 2018, Dr. Cormier diagnosed Suire with disc herniation at C4-5, right carpal tunnel syndrome, and ulnar nerve entrapment of the right elbow. On May 30, 2018, Dr. Cormier filed a 1010 seeking authorization to perform a "Transcervical approach for C4-C7 exposure, evaluate arthrodesis at C5-C7, and C4-5 ACDF with instrumentation, Right Carpal Tunnel release, and ulnar nerve decompression." In a response dated June 1, 2018, the City denied Dr. Cormier's request to perform a second surgery on Suire. Soon thereafter, Dr. Cormier referred Suire to the care of Dr. Munshi, noting at the time Suire's diagnosis of cervical radiculitis and cervical herniated nucleus pulposis (HNP).

5

On three occasions, the City sent Suire to neurosurgeon Dr. Najeeb Thomas to obtain a Second Medical Opinion (SMO). According to the SMO he rendered on September 3, 2015, Dr. Thomas opined that Suire was at Maximum Medical Improvement (MMI), and he recommended that Suire have a Functional Capacity Evaluation (FCE). He also recommended that Suire have "a neuro/psych evaluation [to] get to a higher level of functioning"; however, that recommendation was not repeated in Dr. Thomas' later two SMOs. Suire underwent an FCE on February 18, 2016. After examining Suire on June 20, 2017, and reviewing the FCE, Dr. Thomas again opined that Suire was at MMI and could return to light duty work. He noted that the EMG showed that Suire had carpal tunnel syndrome, although based upon the history, he doubted whether it was related to Suire's work accident. Similar to when he first saw Dr. Thomas, Suire reported his chief complaint was neck pain radiating to his shoulder blades, however, he also reported a complaint of "residual numbness to his thumb and his right arm." On January 15, 2018, Dr. Thomas performed a review of Suire's medical records, including an MRI done on September 5, 2017. He noted that, compared to the 2014 MRI, the bulge at C4-5 had slightly increased, but that he saw no compression of the spinal cord or nerve roots. He believed that Suire was at MMI and could return to light duty work with restrictions, and that no additional surgeries were necessary as a result of his October 2012 work accident.

By letter dated June 7, 2018, the City informed Dr. Cormier of the findings contained in Dr. Thomas' January 2018 SMO and requested that he respond as to whether he agreed or disagreed with each. On June 8, 2018, Dr. Cormier stated that he agreed with Dr. Thomas' opinion that Suire was at MMI and could return to light duty work with restrictions, and that, based on history, Suire's carpal tunnel was not related to his workplace accident. Dr. Cormier declined to check "Yes" or

6

"No" as to whether he agreed to Dr. Thomas' assessment that "No surgery [is] recommended or necessary related to 10/30/12 accident[,]" explaining "I am concerned that Mr. Suire, if accurate, indicated that he did not receive any relief from the cervical operation. If this is true then I would agree with Dr. Thomas."

Pursuant to a request from the City for an Independent Medical Examination (IME), Suire met with neurosurgeon Dr. Anthony Ioppolo on January 16, 2019. After review of Suire's medical records, Dr. Ioppola issued a report on February 15, 2019, wherein he opined that Suire was at MMI and that the surgery recommended by Dr. Munshi would not provide him any long-term benefit.

## *Dr. Picard's Medical Guidelines Dispute Decision (MGDD)*

The two-page MGDD rendered by Dr. Picard provides:

**Reviewed Services:**
**Inpatient Posterior C3-C7 Foraminotomy with Right Carpal Tunnel Release**

The requested services have been reviewed for medical necessity and appropriateness according to the Louisiana Worker's Compensation Treatment Guidelines (R.S. 23:1203. J) and the Louisiana Administrative Code (LAC 40:I.2715). The following decision has been made:

**Decision:** **APPROVED**

**Rationale: Care covered by the medical treatment schedule**

All records submitted were reviewed.[2] The documentation submitted does support the approval of the requested services in review for compliance with the Medical Treatment Schedule.

**The MTG notes the following specific to this request:**

The patient has radicular pain and failure of conservative therapy and positive CTS evaluation and the procedure is allowable as per the guidelines.

---

[2] The MGDD gives no indication of what was submitted to the Medical Director.

7

At the August 30, 2019 hearing conducted by the WCJ, the City presented the testimony of Tara Shelton, a workers' compensation adjustor with Risk Management, Incorporated, who served as the adjustor for Suire's claim since it originated after his October 2012 injury. On direct examination, Shelton stated that none of the physicians who examined Suire opined that his carpal tunnel syndrome was related to his 2012 accident. She explained that she denied Dr. Munshi's request to perform a second surgery on Suire because of the findings made in the SMOs and the IME, along with Dr. Cormier's withdrawal of his recommendation that Suire needed another surgery. Shelton stated that in response to Dr. Munshi's appeal to the Medical Director for approval of the surgery, the only records she sent in were Dr. Thomas' SMOs and the IME from Dr. Ioppolo. When asked why she failed to include the records from Dr. Cormier, Dr. Hodges, or Dr. Jennings, Shelton stated that she "actually thought the OWC IME report would overrule all the other findings." Shelton testified that the medical treatment guidelines (MTGs) required that a psychosocial evaluation be requested before any surgery could be approved, but that Dr. Munshi never sought such an evaluation.

On cross-examination from Suire's attorney, Shelton acknowledged that, in the first SMO he completed on September 3, 2015, Dr. Thomas noted that the day after his workplace injury, Suire "had some numbness, tingling and pain going into his right arm." Shelton similarly agreed that in a May 10, 2018 report that Dr. Cormier issued while he was still Suire's treating physician, he diagnosed right carpal tunnel syndrome and ulnar nerve entrapment of the right elbow, both of which he attributed to Suire's work accident. Shelton stated that when she denied approval of Dr. Munshi's surgical request, she did not mention the need for a psychosocial evaluation nor did the lack of one having been done play a part in her

denial. Suire's attorney then had Shelton read from the Notice of Contravention she issued to describe her denial of Dr. Munshi's request to perform a second surgery on Suire, wherein she wrote that the "OWC IME that was completed by Dr Ioppolo determined that claimant was not a candidate for any future surgeries. Dr Ioppolo stated in [sic] was in agreement with Dr Cormier (past treating physician), Dr Thomas (SMO) that patient is not a candidate for cervical surgery."

As mentioned previously, the WCJ took the matter under advisement at the close of the August 30, 2019 hearing. In an oral ruling given on September 9, 2019, the WCJ stated:

> This matter was a [1008] appeal. The Court, after reviewing the medical director's decision and the medical records that were provided to the Court finds that the Medical Director's decision has not been proven to be faulty in this case because there is no clear and convincing evidence that the decision of the Medical Director was not in accordance with Louisiana Revised Statute 23:1203.1.
>
> The medical records that were entered into evidence in this case do show that there is a dispute concerning whether the surgery would be recommended by the physicians. However, the physicians who questioned the need for the surgery do not address the medical guidelines, and because they do not address the medical guidelines, the Court does not find that clear and convincing evidence was provided to overturn the Medical Director's decision.

### Analysis

As noted above, the law required the WCJ to affirm the MGDD unless the City produced "clear and convincing evidence that the Medical Director's determination is in contravention of the medical treatment guidelines." *See Guidry*, 162 So.3d at 730. Our task on appeal is to determine whether the WCJ committed manifest error in affirming Dr. Picard's MGDD. *Id.* "The WCJ is afforded considerable discretion in evaluating expert testimony, and the decision to accept the testimony of one expert witness over the conflicting testimony of another 'can virtually never be manifestly erroneous.' *Rosell v. ESCO,* 549 So.2d

9

840, 845 (La.1989)." *Spikes v. La. Commerce & Trade Ass'n*, 13-919, p. 12 (La.App. 3 Cir. 7/2/14), 161 So.3d 755, 763.

In its first assignment of error, the City makes the general assertion that the WCJ erred in denying its appeal of the Medical Director's authorization of the surgery recommended by Dr. Munshi. In its third assigned error, the City alleges that the WCJ "erroneously applied the medical treatment guidelines when it affirmed the medical director's decision because Drs. Cormier, Thomas and Ioppollo didn't refer to particular sections of the medical treatment guidelines in their reports and records when all three physicians opined that Suire did not need a second cervical surgery." Because we view the City's third assigned error as being a slightly more specific reiteration of its first, we will address these alleged errors together.

Ms. Shelton testified that the City sent the Medical Director the SMOs by Dr. Thomas and the IME by Dr. Ioppolo. As a result of it providing only a small portion of Suire's medical records, the City put forth a very incomplete picture of his medical history and current condition. For example, while Dr. Ioppolo summarized Suire's medical history in his IME report, he omitted the fact that Dr. Cormier, Suire's long-time treating physician who operated on Suire's neck in 2013, had recommended and sought approval to perform a second cervical procedure and carpal tunnel release on Suire in 2018, similar to the procedure approved for Dr. Munshi to now perform.

In support of its third assignment of error, the City places much focus on the WCJ's oral reasons for judgment. However, as courts of this state have long recognized:

> [D]istrict court's oral or written reasons for judgment form no part of
> the judgment, and that appellate courts review judgments, not reasons
> for judgment." *Bellard v. American Cent. Ins. Co.,* 2007–1335 p. 25

> (La.4/18/08), 980 So.2d 654, 671; *Greater New Orleans Expressway Commission v. Olivier,* 2002–2795 p. 3 (La.11/18/03), 860 So.2d 22, 24 ("Appeals are taken from the judgment, not the written reasons for judgment."); La. C.C.P. arts. 1918, 2082 and 2083. Judgments are often upheld on appeal for reasons different than those assigned by the district judges. "The written reasons for judgment are merely an explication of the trial court's determinations. They do not alter, amend, or affect the final judgment being appealed...." *State in the Interest of Mason,* 356 So.2d 530, 532 (La.App. 1 Cir.1977).

*Wooley v. Lucksinger*, 09-0571, pp. 77-78 (La. 4/1/11), 61 So.3d 507, 572. Thus, our review of whether the record offers a "reasonable basis to support the decision" of the WCJ is not dependent upon the oral reasons he gave in conjunction with his denial of the City's appeal. *See Guidry*, 162 So.3d at 730.

In its appellate brief, the City asks "how much more medical evidence is needed to be 'clear and convincing'" that the Medical Director erred in approving the surgical request where "the employee's first treating doctor, the SMO, and the IME all agree that the extensive cervical surgery proposed by Dr. Munshi is unnecessary?" As mentioned above, the Medical Director was not supplied with a complete and accurate record of Suire's medical history. On the other hand, the WCJ was able to review Suire's extensive medical history and thereafter determined that the City had not offered "clear and convincing evidence that the Medical Director's determination is in contravention of the medical treatment guidelines." *Guidry*, 162 So.3d at 730. The undeniable truth is that both of Suire's neurosurgeons recommended that he undergo a second cervical surgery with a carpal tunnel release. The mere fact that Dr. Cormier later decided to hand off Suire's future care to Dr. Munshi after the City denied Dr. Cormier's second request to operate on Suire does not make the proposed surgery no longer medically necessary. Our conclusion in this regard is bolstered by the fact that Dr. Cormier's standing diagnosis of Suire at the time he discharged him was of cervical radiculitis and cervical herniated nucleus pulposis (HNP).

11

With regard to the City's claim that Dr. Munshi should have made Suire undergo a psychosocial evaluation before seeking approval to perform surgery on him, we note that the City failed to point out to the WCJ which MTG allegedly required such testing. In the "issues presented for review" section of its brief to this court, the City references an excerpt from a provision from Chapter 20(A) Section 2007 of the MTGs titled "Follow-Up Diagnostic Imaging and Testing Procedure" relative to cervical spine injuries, which provides:

> Psychological/psychosocial and measures have been shown to have predictive value for postoperative response, and therefore should be strongly considered for use pre-operatively when the surgeon has concerns about the relationship between symptoms and findings, or when the surgeon is aware of indications of psychological complication or risk factors for psychological complication (e.g. childhood psychological trauma).

La.Admin.Code tit. 40, § 2007(C)(2) (June 2014). On the other hand, Suire entered into evidence at the WCJ hearing a provision from the MTGs relative to the cervical spine, under the section labeled "Therapeutic Procedures—Operative," which provides that "Psychological evaluation is strongly encouraged when surgery is being performed for isolated axial pain to determine if the patient will likely benefit from the treatment." La.Admin.Code tit. 40, § 2011(C) (June 2014).

As Suire correctly points out, the MTG provision referenced by the City is applicable "when the surgeon has concerns about the relationship between symptoms and findings," while here, Dr. Munshi had no such concerns as Suire's subjective complaints were objectively corroborated in multiple MRIs and EMGs. Suire submits that because Suire's "pain appears to have been generated by disc injury . . . and not from muscles, ligaments or joints, Dr. Munshi, as the treating physician, did not raise concerns about risk factors, which would have implicated the need for preoperative psychological testing." We agree. Moreover, we

12

conclude that none of the MTGs referenced above mandate presurgical psychological testing.

In its second assigned error, the City asserts that the WCJ "erroneously applied the Medical Treatment Guideline pertaining to cervical spine injury . . . and carpel tunnel syndrome treatment guidelines. . . ." The City fails to point to any specific provision that the WCJ misapplied. Moreover, it fails to brief this assignment of error, in violation of Uniform Rules—Courts of Appeal, Rule 2–12.4. Accordingly, we consider this argument to be abandoned. *See Ledet v. CETCO Oilfield Servs. Co., LLC*, 16-342 (La.App. 3 Cir. 12/28/16), 209 So.3d 896.

After review, we find no manifest error in the WCJ's denial of the City's appeal of the Medical Director's decision to authorize the surgery proposed by Dr. Munshi.

## DECREE

For the foregoing reasons, the judgment of the workers' compensation judge affirming the Medical Director's decision to deny the City of Abbeville's appeal of Dr. Ilyas Munshi's proposed Inpatient Posterior C3-C7 Foraminotomy with Right Carpal Tunnel Release on Clifford Suire is affirmed. All costs of this appeal are assessed against the employer, the City of Abbeville.

**AFFIRMED.**